Larrimer *v.* Feeney, Appellant.

Argued March 25, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and ROBERTS, JJ.

*James Victor Voss,* with him *Victor E. Voss, Walter S. Feeney,* and *Voss & Voss,* for appellant.

*Robert S. Grigsby,* with him *Pringle, Bredin & Martin,* for appellee.

OPINION BY MR. JUSTICE EAGEN, July 2, 1963:

This is an appeal from a final decree of the court en banc affirming a decree nisi entered by the chancellor, which rendered a judgment in the amount of $46,621.73 in favor of James C. Larrimer, Trustee in Bankruptcy of the Estate of Ralph B. Hatz, Bankrupt, against the appellant executrix of the Estate of Emily K. Wirth.

The facts of the case are stated in detail in the able opinion of the court below and may be summarized as follows:

From about 1947 to September 1957, Hatz was engaged in the buying and selling of listed and unlisted securities. Under his scheme of operation, he borrowed money from his customers to invest in securities and agreed to pay them a return of two per cent per month on their investments. Each loan was callable

on thirty days notice. All investments were made in the name of Hatz. From 1948 to the time of his adjudication in bankruptcy, the number of Hatz's customers increased from one (the plaintiff herein) to a total of 143. The amount of the loans received by Hatz totalled $1,030,369.48. He repaid unsecured creditors the sum of $295,223.61 of which $158,194.20 was principal and $137,029.41 interest. The unpaid balance due his creditors was $735,145.87. Of his 143 customers, 44 received no payment at all; 84 received part payment; 15 received payments in excess of the money advanced. The appellant was a member of the last fortunate group. As of April 8, 1953, she had received her investment of $34,362.37 plus interest at six per cent per annum or a total of $40,037.39. Subsequently, she received an additional amount of $46,621.73. Hatz kept his financial affairs in a haphazard fashion and indicated he never knew his true financial position. Accountants for the trustee in bankruptcy were able to reconstruct his financial position as of several calendar years as follows: Year ending, 12/31/52, Deficit Net Worth, $62,345.86; Year ending, 12/31/53, Deficit Net Worth, $279,165.37; Year ending, 12/31/54, Deficit Net Worth, $235,302.00; Year ending, 12/31/55, Deficit Net Worth, $339,953.23.

The plaintiff alleges that any payments made by Hatz exceeding the amount loaned plus the legal rate of interest were without fair consideration and were fraudulent since 1) Hatz was insolvent at the time of such payments; 2) his capital was unreasonably small for the kind of business he was engaged in; 3) the payments made by Hatz were made when he intended to incur debts beyond his ability to pay as they matured; 4) the payments were made to hinder, delay or defraud present and future creditors.

The relief sought by the plaintiff is to set aside as fraudulent the excess of payments over the amount of

the loan plus interest computed at the legal rate. The amount sought to be recovered from the appellant herein was $46,621.73.

The trustee instituted this action alleging a violation of the provisions of the Pennsylvania Uniform Fraudulent Conveyance Act of May 21, 1921, P. L. 1045, 39 P.S. §§351-363.

The Pennsylvania Uniform Fraudulent Conveyance Act of May 21, 1921, P. L. 1045, §4; 39 P.S. §354 provides: "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent, is fraudulent as to creditors, without regard to his actual intent, if the conveyance is incurred without a fair consideration."

Two requisites which must be present before a violation of the foregoing section can be asserted are insolvency, and absence of fair consideration. Insolvency has two well tested meanings. In the bankruptcy sense, the test of insolvency is purely mathematical and results when the aggregate value of the debtor's property is less than his liabilities. Insolvency in the equity sense, on the other hand, is the inability to meet obligations as they mature. *Langham, Langston and Burnett v. Blanchard*, 246 F. 2d 529 (5th Cir. 1957).

Our statute defines insolvency as follows: "(1.) A person is insolvent when the present, fair, salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." [1]

The appellant asserts that so long as a debtor continues to pay his debts as they mature, regardless of how he accomplished that object, and regardless of the fact that his liabilities are far in excess of his assets, he is still solvent under the Pennsylvania act. The

---

[1] Act of May 21, 1921, P. L. 1045, §2, 39 P.S. §352.

Pennsylvania cases have construed the foregoing definition as meaning that a person is insolvent when he does not have the present ability to pay his debts and not when he is unable to trade on credit: *Fid. T. Co. v. Union N. Bk.*, 313 Pa. 467, 169 A. 209 (1933). By the term insolvency is not to be understood an absolute inability to pay one's debts at some future time upon a settlement and winding up of all a trader's concern, but a trader may be said to be in insolvent circumstances when he is not in a condition to pay his debts as persons carrying on trade usually do. 21A Words and Phrases, Insolvency, at 441, 442. The equity definition of insolvency conceives of it as a *status* or *condition* to be differentiated from mere symptomatic occurrences such as chronic defaults in current payments. 1 Collier on Bankruptcy, §1 (14 ed. 1962) at 89.

A reasonable construction of the foregoing statutory definition of insolvency indicates that it not only encompasses insolvency in the bankruptcy sense, i.e., a deficit net worth, but also includes a condition wherein a debtor has insufficient presently salable assets to pay existing debts as they mature. If a debtor has a deficit net worth, then the present salable value of his assets must be less than the amount required to pay the liability on his debts as they mature. A debtor may have substantial paper net worth including assets which have a small salable value, but which if held to a subsequent date could have a much higher salable value. Nevertheless, if the *present* salable value of assets are less than the amount required to pay existing debts as they mature the debtor is insolvent. See, *Fid. T. Co. v. Union N. Bk.*, supra.

The financial status of Hatz was deranged from at least December 31, 1952, to the time of his adjudication in bankruptcy. He borrowed money at interest rates in excess of the legal rate in order to keep his head above

water. But his efforts were unavailing. His sanguine expectations that the stock market would fluctuate sufficiently were in vain. He was neither able to meet his debts in the ordinary course of business, nor was the present fair salable value of his assets sufficient to meet his existing debts as they matured. He was insolvent from December 31, 1952, to the date of his adjudication.

The next question to be determined is whether the payments made in excess of the legal rate of interest were for a fair consideration. Section 3 of the Act of 1921, supra, provides: "Fair consideration is given for property or obligation: (a) When, in exchange for such property or obligation, as a fair equivalent therefor in good faith, property is conveyed or an antecedent debt is satisfied; . . ." The Pennsylvania Uniform Fraudulent Conveyance Act defines "debt" as "any legal liability . . ." [2] The payment of interest in excess of the legal rate was not a "legal liability" of Hatz. The Act of May 28, 1858, P. L. 622, §2, 41 P.S. §4, provides that, "the borrower or debtor shall not be required to pay to the creditor the excess over the legal rate." The payments in question were not for a fair consideration since Hatz had no legal obligation to make them and, therefore, could not be satisfying an antecedent debt within the meaning of the statute. It must be further borne in mind that the question of fair consideration as it pertains to an alleged fraudulent conveyance must be determined from the standpoint of creditors: *Bailey v. Leeper,* 142 C.A. 2d 460, 298 P. 2d 684 (1956).

The appellant further argues that the action herein is brought to recover usurious interest payments and that such recovery is barred by the Act of 1858, supra, §2, 41 P.S. §4, which provides that "no action to recover back any such excess shall be sustained in any

---

[2] Act of May 21, 1921, supra, §1, 39 P.S. §351.

court of this Commonwealth, unless the same shall have been commenced within six months from and after the time of such payment." This Court previously held that the identity of the trustee of the bankrupt estate is so closely allied with that of the bankrupt debtor that he may avail himself of the latter's right to recover usurious interest payments, and further that the limitation of six months of the Act of May 28, 1858, supra, applies to a trustee asserting such a right: *Kelter v. Amer. Bankers Finance Co.*, 306 Pa. 483, 160 A. 127 (1932). But the action in the instant case is not brought by the trustee in bankruptcy asserting a right of the bankrupt to recover usurious interest payments. Such an action would be barred by the Act of 1858, supra, since the six month period had passed before the instant action was brought. This action is brought by the trustee in bankruptcy on behalf of all the bankrupt's creditors to set aside fraudulent conveyances made by a *debtor* while *insolvent and without a fair consideration.* Hatz was insolvent and the conveyance was made without a fair consideration. The limitation of the Act of 1858 has no application.

There are several other grounds under the Pennsylvania Uniform Fraudulent Conveyance Act by which these conveyances could be considered fraudulent, but they need not be discussed since the conveyances were fraudulent under Section 4 of the Act of May 21, 1921, supra.

Decree affirmed. Costs on appellant.

Mr. Chief Justice BELL and Mr. Justice COHEN dissent.

Mr. Justice O'BRIEN took no part in the consideration or decision of this case.