JANN M. ALEXANDER, TRANSFEREE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Alexander v. Commissioner
Docket No. 10143-77.
United States Tax Court
T.C. Memo 1981-374; 1981 Tax Ct. Memo LEXIS 369; 42 T.C.M. (CCH) 451; T.C.M. (RIA) 81374; July 22, 1981
*369 Held: Petitioner is liable as a transferee under sections 6901(a) and 6902(a), Internal Revenue Code of 1954. Jerome Kaplan, for the petitioner. Marc A. Feller, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: The respondent determined that petitioner Jann M. Alexander was liable as a transferee of Raymond A. Hossbach for a deficiency in income tax for 1975 to the extent of $ 54,000 plus interest. There is no dispute as to the liability *371 of Raymond A. Hossbach for a deficiency in, or additions to, tax for 1975. Nor has any dispute arisen as to the amount of petitioner's liability if in fact she is liable as transferee. The only issue for decision is whether respondent has established petitioner's liability as a transferee. Sections 6901(a), 6902, I.R.C. 1954. [1]
FINDINGS OF FACT Some of the facts were stipulated and they are so found. The stipulation of facts together with the exhibits attached thereto are incorporated herein by this reference. Petitioner Jann M. Alexander (hereinafter petitioner) is an individual who resided in Furlong, Pennsylvania, when the petition in this case was filed. By deed dated March 12, 1976, Raymond A. Hossbach (hereinafter Hossbach) transferred residential property located at 662 Swamp Road, Furlong, Bucks County, Pa. (hereinafter Swamp Road property), to petitioner. [2] The fair market value of the property was $ 54,000 at the time of the transfer. Petitioner has resided in this property since March 1976. *372 Although the deed recited that petitioner paid $ 54,000 to Hossbach in consideration for the transfer of the Swamp Road property, no monetary consideration was in fact paid. As of the time of the transfer of the Swamp Road property to petitioner, Hossbach also owned the following assets: Item
Value
Cost
Cash
$ 27,747.12
Cash
$ 1,000.00
Car
$ 1,500.00
Car
$ 6,000.00
Real Property
$ 17,500.00
On June 2, 1977, respondent prepared a Collection Information Statement (Form 433-B) which Hossbach signed and on which the following assets and liabilities were listed for Hossbach: Assets
Bank Account Balances
$ 300
Real Property
10,000
Car
6,000
$ 16,300
Liabilities
Pa. State Income Tax
$ 45,000
Pa. State Fines
15,000
U.S. Government Fines
5,000
$ 65,000
In June 1977, jeopardy assessments were made for Hossbach's 1974 and 1975 tax liabilities. Carlo Gonnella (hereinafter Gonnella) was the revenue officer assigned to collect these liabilities, as well as Hossbach's tax liabilities for 1976, for which year the respondent had earlier issued a termination assessment. Gonnella's collection efforts included: *373 Levying on $ 1,000 seized by the Drug Enforcement Administration; levying on $ 27,747.12 recovered by the police after a robbery from Hossbach; [3] filing tax liens in Bradford, Bucks, Montgomery and Tioga Counties, Pennsylvania; and levying on Hossbach's bank accounts. Gonnella also investigated other leads concerning the location and extent of Hossbach's assets. Hossbach's use of various aliases made Gonnella's task more difficult. At the same time the State of Pennsylvania was also attempting to collect tax liabilities from Hossbach. With the exception of the cash which was obtained from the Drug Enforcement Administration and the police, Gonnella's efforts did not result in the recovery of any significant amount. Hossbach's bank accounts yielded no funds; one of his automobiles was apparently seized by the State authorities and the other automobile by Federal authorities investigating Hossbach's illegal activities; and Hossbach's Tioga *374 County property was apparently sold by the State at a tax sale. Gonnella concluded after his investigation that Hossbach was insolvent. On July 27, 1977, respondent issued to petitioner a notice of liability which asserted transferee liability against her in the amount of $ 54,000 plus interest for the 1975 tax liability of Hossbach. On January 24, 1979, this Court entered a decision, pursuant to the agreement of respondent and Hossbach, that Hossbach was liable for deficiencies in income taxes for the taxable years 1974 and 1975 in the respective amounts of $ 36,244.18 and $ 111,283.90. The decision also set forth Hossbach's liability for additions to tax under sections 6651(a), 6653(a) and 6654 for the years 1974 and 1975 in the total respective amounts of $ 12,022.07 and $ 36,931.33. The deficiencies in and additions to tax agreed to by Hossbach for the years 1974 and 1975 resulted from unreported income earned by Hossbach during those years from the illegal manufacture of drugs. As of the trial of this case in December 1979, Hossbach owed approximately $ 56,000 for 1974 and $ 160,000 for 1975 in tax and additions to tax, plus interest. ULTIMATE FINDINGS OF FACT *375 As of March 12, 1976, Hossbach's liabilities, including his liability for Federal income taxes for 1974 and 1975, far exceeded his assets. As of that date Hossbach was insolvent. Hossbach transferred the Swamp Road property to petitioner for no consideration. OPINION The only issue for decision is whether petitioner Jann M. Alexander is liable to the extent of $ 54,000 plus interest as a transferee under section 6901(a) for the income tax deficiency and additions to tax assessed against Raymond A. Hossbach for the taxable year ended December 31, 1975. Pursuant to the agreement of Hossbach and respondent, this Court entered a stipulated decision on January 24, 1979, determining a deficiency and additions to tax in the total amount of $ 148,215.23 for Hossbach's taxable year 1975. Petitioner does not contest the amount owed by Hossbach for 1975, but she does contend that she is not liable as a transferee. On March 12, 1976, Hossbach deeded certain real property, herein known as the Swamp Road property, with a fair market value of $ 54,000, to petitioner. Although the deed recited that $ 54,000 was paid in consideration for the transfer of the property, no monetary consideration *376 was in fact paid. Respondent contends that petitioner is liable as a transferee as a result of this transfer. Section 6901(a)(1)(A) provides that the liability, at law or in equity, of the transferee of property for the taxes of the transferor may be assessed, paid and collected in the same manner as in the case of the taxes with respect to which the liability was incurred. This provision, however, only provides a procedure by which respondent may collect taxes. Commissioner v. Stern, 357 U.S. 39, 42-45 (1958); Scott v. Commissioner, 70 T.C. 71, 79 (1978). Whether, and the extent to which, the transferee is liable for the taxes of the transferor is a question of State law. Commissioner v. Stern, supra; Scott v. Commissioner, supra.The respondent has the burden of proving all the elements necessary to establish the existence of transferee liability. Section 6902(a); Rule 142(d), Tax Court Rules of Practice and Procedure.
The State law applicable in the instant case is that of Pennsylvania. Its Uniform Fraudulent Conveyance Act (Pa. Stat. Ann. tit. 39, sections 351-363 (Purdon)) provides in part: *377 Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent, is fraudulent as to creditors, without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration. [Pa. Stat. Ann. supra, section 354] A conveyance fraudulent as to creditors may be set aside. Pa. Stat. Ann. supra, sections 361, 362. Baker v. Geist, 457 Pa. 73, 321 A.2d 634 (1976). There is no dispute herein as to whether the transfer of the Swamp Road property comes within the meaning of the term "conveyance" (see Pa. Stat. Ann. supra, sec. 351); or whether respondent qualifies as a "creditor" of Hossbach (see Pa. Stat. Ann. supra, sec. 351). The dispute concerns both whether there was fair consideration for the transfer and whether Hossbach was insolvent at the time of the transfer or was rendered insolvent thereby. The term "fair consideration" is defined as: Fair consideration is given for property or obligation: (a) When, in exchange for such property or obligation, as a fair equivalent therefor and in good faith, property is conveyed or an antecedent debt is satisfied; *378 or (b) When such property or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property or obligation obtained (Pa. Stat. Ann. supra, sec. 353). The parties stipulated that no cash consideration was paid for the transfer of the Swamp Road property, despite the deed recitation to the contrary. Petitioner contends, however, and so testified at trial, that she performed certain domestic and secretarial services for Hossbach during the period 1972-1975, that the Swamp Road property was transferred to her as compensation for those services, and that the value of those services was a fair equivalent for the transfer of the Swamp Road property. The services alleged to have been rendered include occasional baby-sitting for Hossbach's girlfriend's child, cooking meals, running errands, and typing letters. Petitioner testified that she performed these various services based on the general understanding that Hossbach would recompense her at some future time and that the transfer of the Swamp Road property was in fulfillment of that understanding. Hossbach also testified and *379 his testimony mirrored that of petitioner. Although petitioner's and Hossbach's testimonies were not specifically contradicted, we are not required to accept at face value testimony which we find to be improbable or lacking in credibility. Archer v. Commissioner, 227 F.2d 270 (5th Cir. 1955); Boyett v. Commissioner, 204 F.2d 205 (5th Cir. 1953), affg. a Memorandum Opinion of this Court. We do not doubt that at one time or the other petitioner performed "services" for Hossbach of the type set forth above. We do not believe, however, that the services performed were as extensive as petitioner would have us believe; that they were undertaken based on the understanding that Hossbach would compensate petitioner for them; or that Hossbach transferred the Swamp Road property to petitioner as "compensation" for those "services." [4]
*380 A more likely explanation for the transfer of the Swamp Road property begins with petitioner's performance, as a friend, of a number of "services" for Hossbach over the course of the 1972-1975 period. Rather than being performed pursuant to an understanding that Hossbach would pay for the services or pursuant to an employment relationship, the services were of the nature which one friend does for another as a favor without expectation of compensation. In January 1976 the building in which Hossbach was illegally manufacturing drugs exploded and burned. Fearing that he would soon be caught and believing that once he was caught the Swamp Road property (in which he was then residing) would be of little use to him, he transferred the property to petitioner, a friend and a person who could use the property. In doing so, Hossbach no doubt believed he was "repaying" petitioner for the "services" which she had earlier performed for him, although without any thought that the value of the property transferred was in any way related to the value of the "services." This belief, however, does not transform what were in essence independent and gratuitous acts into the quid pro quos of an employment *381 relationship. What Hossbach did repay was kindness and friendship. This explanation of the transfer is consistent with pre-trial statements by petitioner. When first questioned by the revenue agent concerning how she acquired the Swamp Road property, petitioner claimed that she had paid for the property. When the revenue agent later challenged her explanation, petitioner claimed her boyfriend (not Hossbach) had given her money to buy the property. When, in the presence of the revenue agent, the boyfriend would not corroborate her statement, petitioner then told the revenue agent that Hossbach had transferred the property to her for "love and affection." Similarly, Hossbach told a federal agent shortly after his arrest in May 1976 that he sold the property to petitioner for $ 1 because she was a "good friend." The contention that petitioner had received the Swamp Road property in consideration for her services first surfaced in petitioner's petition to this Court. If it were in fact true, why did petitioner not mention it to the revenue agent when she was first asked to explain the transfer? We do not see how it would benefit petitioner to hide this explanation, if true, or *382 why she would have wanted to do so if, in fact, it was the reason. We suspect that, when faced with the prospect of transferee liability, petitioner looked onto the fact that she did favors for Hossbach and from there tried to build an argument that an employment-relationship existed. In summary, we conclude that petitioner did not provide fair consideration for the transfer to her of the Swamp Road property. We believe the transfer was a gratuitous, voluntary act by Hossbach which was not intended as, and was not in fact, compensation for earlier services rendered by petitioner. Furthermore, respondent has prima facie established that the transfer was made without fair consideration and the burden was on petitioner to produce evidence that the services she claimed to have rendered were fair consideration for the property transferred. Scott v. Commissioner, supra at 81. See and compare Newcomb v. Commissioner, 23 T.C. 954 (1955); Commonwealth v. Smith, 344 Pa. 381, 25 A.2d 694 (1942). This she has failed to do. The next question which must be addressed is whether the transfer was made when Hossbach was insolvent or whether *383 the transfer rendered him insolvent. Insolvency is defined as: A person is insolvent when the present, fair, salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured. [Pa. Stat. Ann. supra, section 352(1).] As noted above, there is no dispute as to the amounts of tax owed by Hossbach for 1974 ($ 36,244.18) and for 1975 ($ 111,283.80). Nor is there any dispute as to the correctness of considering these amounts as liabilities in determining whether Hossbach was insolvent when the transfer of the Swamp Road property was made or was rendered insolvent as a result thereof. [4] The dispute centers around Hossbach's assets. *384 We have made factual findings concerning Hossbach's assets in March 1976 in addition to the Swamp Road property. See page 4 supra. The evidence presented as to some of these items was vague and we have done our best with what was presented. The $27,747.12 figure for cash was based on an amount upon which respondent had levied. In April 1976 Hossbach was robbed of some cash. Shortly after the robbery occurred, the police recovered some amount. Subsequently, the Internal Revenue Service levied on the amount recovered by the police and obtained and credited $ 27,747.12 against Hossbach's income tax liabilities. [5]
Respondent does not argue that this cash was not an asset of Hossbach in March 1976. Rather, he argues that it should not be considered an *385 asset because to do so would result in a double "credit" for the amount since it has already been applied against Hossbach's tax liability. We cannot accept respondent's argument. There is no evidence that the $ 27,747.12 was applied against Hossbach's tax liabilities for 1974 and 1975. The evidence presented indicates that the sum was applied against the termination assessment for 1976. There being no reduction for this amount in Hossbach's tax liabilities for 1974 and 1975 which compose the liability side of the solvency equation, then the cash figure must be included in the asset side since the cash was an asset and since it has not already been taken into consideration. The $ 1,000 cash figure included in the list of assets was an amount which the Drug Enforcement Administration seized during the course of Hossbach's arrest in May 1976. Subsequently, the Internal Revenue Service also levied on and obtained this amount and credited it against Hossbach's tax liabilities. No detailed evidence was presented concerning the value of the cars included in the list of assets. Considering the general evidence presented, these vehicles could not have had a value in excess of their *386 costs. We have so considered them in our determination. The real property item listed refers to two adjacent one-acre lots in Delmar Township, Tioga County, Pa., for which Hossbach paid $ 17,500 in April 1975. In Hossbach v. Commissioner, T.C. Memo 1981-291, at issue was Hossbach's entitlement to a section 165(c) casualty loss deduction for the destruction of a building on one of the lots on January 21, 1976. In that case Hossbach and respondent agreed that Hossbach's basis in one of the lots was $ 12,000, of which $ 3,000 was allocable to the land and $ 9,000 was allocable to the building. This Court determined on the facts of that case that Hossbach was entitled to a casualty loss deduction for the destruction of the building. In the instant case, the parties did not agree to and no evidence was offered as to the value of the two lots subsequent to January 1976 or in March 1976. On the Collection Information Sheet prepared in June 1977 and introduced in evidence, see p. 4 supra, Hossbach attributed a value of $ 10,000 to the property. Certainly, the destruction of the building resulted in a reduction of the total value of the two lots, but respondent, *387 who has the burden of proof under section 6902, has not introduced evidence to support respondent's statement on brief that the building's destruction and a State tax lien reduced the property's value to zero. Consequently, we have listed the asset's value as the cost of the property, due to the short time span between the purchase of the property and the crucial date involved. Petitioner has not argued that the property had a greater value. In addition to the foregoing assets, petitioner claims that when the Swamp Road property was transferred, Hossbach also had the following assets: (a) Accounts receivable of $ 43,000; (b) additional tangible property in the four Pennsylvania counties in which respondent filed liens; and (c) cash of $ 125,000. The accounts receivable of $ 43,000 was composed of amounts which Hossbach claimed were owed to him by individuals with whom Hossbach had been involved in his drug business. Hossbach also testified that he had unsuccessfully tried to collect these amounts. Even if the accounts receivable were owed to Hossbach, by his own admission they were uncollectable. Under these circumstances they cannot be said to have any "present salable *388 value." Petitioner's claim that Hossbach had property in four Pennsylvania counties, which property was not considered by respondent in determining Hossbach's solvency, is apparently premised solely on the fact that a revenue agent filed tax liens in those counties on any property therein that Hossbach may have owned. The revenue agent's action was done as a protective measure in the event it was ultimately discovered that Hossbach did have property in those counties. In March 1976 Hossbach owned no property in either Bradford or Montgomery Counties. Hossbach had previously owned property in Bradford County, but he had disposed of it by gift to another woman in 1975. The only Bucks County property owned by Hossbach was the Swamp Road property, the subject of the instant case. The only Tioga County property was that on which occurred the January 1976 explosion and fire. In our determination we have taken this property into consideration. No evidence exists that Hossbach owned any other property in either Bucks or Tioga Counties which has not been considered. Finally, petitioner's claim that Hossbach had $ 125,000 in cash is premised on Hossbach's testimony that he had secreted *389 that amount before his arrest. As was the case with other portions of the testimony presented herein, we find this testimony lacking in credibility. Archer v. Commissioner, supra.We do not believe any such sum existed. Based on the evidence presented, we can only conclude that Hossbach was insolvent at the time he transferred the Swamp Road property to petitioner. His assets consisted of cash of approximately $ 28,000; cars worth $ 7,500; real property worth $ 17,500; and the Swamp Road property worth $ 54,000. The total value of these assets equals $ 107,000.Hossbach's liabilities for Federal income tax deficiencies for 1974 and 1975 alone equalled $ 147,000. [6] This imbalance between assets and liabilities was only exacerbated when Hossbach transferred the Swamp Road property to petitioner for no consideration. Under these circumstances we believe Hossbach was insolvent under the statutory definition. Petitioner generally argues that it is inconsistent to conclude that Hossbach *390 had large tax liabilities for 1974 and 1975 and also to conclude that Hossbach was insolvent in March 1976. While this factor arouses our curiosity it does not necessarily produce an inconsistency. It cannot be presumed, based on the existence of income tax liabilities for 1974 and 1975, and, hence, taxable income for those years, that Hossbach had assets in March 1976 which equalled the taxable income agreed upon for 1974 and 1975. One explanation is that the income could have been disposed of by events which were not reflected on the income tax returns or in the evidence. Moreover, from the evidence presented, it appears that respondent's agents conducted a thorough investigation of Hossbach's assets. Hossbach gave respondent's agents no hint of a cash horde or other assets during their investigation. He first mentioned during his testimony in this case that he had secreted $ 125,000 in cash in the ground somewhere. He testified that he did not remember where it was, that he would not tell anyone even if he knew, and that he had not recovered any of it since he had been released from prison about two years prior thereto. We do not believe respondent must take such an implausible *391 and unverified claim into consideration in the insolvency equation for Hossbach. If such a cash horde existed, it was not available to Hossbach's creditors. See Newcomb v. Commissioner, supra; Brown v. Commissioner, 24 T.C. 256, 267 (1955); Larrimer v. Feeney, 411 Pa. 604, 192 A.2d 351 (1963). Petitioner's claim concerning the existence of additional assets are, as previously discussed, without merit. The evidence is clear that Hossbach had few assets in March 1976 when he transferred the Swamp Road property to petitioner and that his liabilities exceeded his assets. Petitioner's final argument is that respondent has failed to exhaust its collection remedies against Hossbach. See Scott v. Commissioner, supra. We do not agree. As set forth in the Findings of Fact, Hossbach's unpaid liability for income taxes for 1975 was substantial as of the time of trial. Moreover, we believe the respondent's agents have exercised considerable diligence in attempting to locate Hossbach's assets. In sum, we conclude that respondent has established petitioner's liability as a transferee to the extent of $ 54,000 *392 plus interest. Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable year in issue.↩
2. Hossbach had purchased the Swamp Road property in October 1975 under the alias of Frank Supernowicz. He used this same alias when transferring the property to petitioner.↩
3. Apparently because the termination assessment for Hossbach's taxable year 1976 preceded the jeopardy assessments for the years 1974 and 1975, both the $ 1,000 and $ 27,747.12 amounts were credited against Hossbach's 1976 tax liability.↩
4. The testimony of both petitioner and Hossbach indicate that these "services" were performed only on an occasional and informal basis rather than on a regular basis. Petitioner testified that she was working and taking care of her own child during most of the period during which the "services" were supposed to have been rendered.↩
4. Respondent also claims that Hossbach had as liabilities those shown on the Collection Information Statement prepared in June 1977. Due to the absence of any explanatory information concerning these liabilities and the time lag between the preparation date of this statement and the crucial period (March 1976 when the Swamp Road property transfer was made), we are not prepared to find that the liabilities listed were "liabilities" within the meaning of Pa. Stat. Ann. tit. 39, sec. 352↩(1) (Purdon), for purposes of our determination.
5. See and compare the related case of Hossbach v. Commissioner, T.C. Memo 1981-291↩, which involved Hossbach's tax liability for the period January 1 to May 29, 1976, in which it was stipulated that the police recovered $ 28,753. No evidence was introduced in the instant case to indicate that any amount larger than $ 27,747.12 was recovered by the police. Consequently, we have used the lesser figure.
6. We have considered only the tax deficiencies and not amounts owed for additions to tax because Hossbach's liability for some of the latter amounts arose after March 1976.↩