**In re William C. GLENN and Mildred Glenn, Debtors.**

**FIDELITY & DEPOSIT COMPANY OF MARYLAND, Plaintiff,**

**v.**

**William C. GLENN; Mildred Glenn; and Marcia Glenn, Defendants.**

**Bankruptcy No. 88–1665.**
**Adv. No. 88–0557.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Oct. 16, 1989.

Mary E. Bower, Pittsburgh, Pa., for defendants/debtors.

K. Lawrence Kemp, Kemp & Kemp, New Kensington, Pa., for defendant/Marcia Glenn.

Larry A. Silverman, Dickie, McCamey & Chilcote, P.C., Pittsburgh, Pa., for plaintiff.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Plaintiff Fidelity & Deposit Company of Maryland (hereinafter "F & D") has brought this action pursuant to Pennsylvania's Fraudulent Conveyance Act (the "Act"), 39 Pa.C.S.A. §§ 351 *et seq.* (1954). It seeks to have a conveyance of real property located at 103 Haverford Road, Pittsburgh, Pennsylvania, by Defendants William and Mildred Glenn to Defendants Mildred and Marcia Glenn declared fraudulent and to have the conveyance set aside.

F & D maintains that the conveyance was fraudulent in that it was made without fair consideration and that William Glenn thereby was rendered insolvent. It also contends that the conveyance was fraudulent in that it was made with actual intent to hinder, delay, or defraud his creditors.

Defendants deny that the conveyance was made without fair consideration and rendered William Glenn insolvent and deny that it was made with actual intent to hinder, delay, or defraud his creditors.

The Court has considered the testimony of the witnesses, reviewed all of the exhibits, and researched the applicable law, and herein determines for reasons set forth below that the conveyance was fraudulent in

that it was made without fair consideration and rendered William Glenn insolvent.[1] F & D's request that the conveyance be set aside will be granted.

## I. FACTS

William Glenn, who at the time was a member of the Board of Directors of New World National Bank ("NWNB"), applied for a $250,000.00 line of credit from NWNB on November 16, 1984. He ultimately received a loan in the amount of $173,950.00 from NWNB on December 4, 1984. According to the promissory note executed by William Glenn, the term of the loan was ten (10) years and the total amount due, including principal and interest, was $373,992.50. The proceeds of the loan were used, at least in part, to purchase NWNB stock.

On December 4, 1984, F & D issued Bond No. 5829772 to NWNB. The loan provided NWNB with coverage for losses it might suffer as a result of employee dishonesty.

On December 20, 1984, Mildred Glenn, who at the time was the wife of William Glenn and also President of NWNB, executed a Confession of Judgment on behalf of NWNB against William Glenn in the amount of $373,992.50 (the total amount of principal and interest due on the note) in the Court of Common Pleas of Allegheny County, Pennsylvania.

On April 30, 1985, William and Mildred Glenn conveyed real property located at 103 Haverford Road, Pittsburgh, to Mildred and Marcia Glenn for "the sum of one ($1.00) dollar and other valuable consideration". Marcia Glenn, a medical doctor and the adult daughter of William and Mildred Glenn, resides in Philadelphia, Pennsylvania.

NWNB filed a claim with F & D on March 21, 1986. The claim arose out of the issuance of the loan to William Glenn.

On December 30, 1986, in consideration for the payment of $168,950.00 to it by F & D, NWNB assigned to F & D all of its claims or causes of action arising under the bond issued on December 4, 1984. The assignment was limited to $168,950.00, the amount of the loan less a $5,000.00 deductible.

William and Mildred Glenn were named as defendants on May 21, 1986, in a three-count criminal indictment in the United States District Court for the Western District of Pennsylvania at Crim. No. 86-110. Count I charged William and Mildred Glenn with violating 18 U.S.C. § 371. Count II charged William Glenn with violating 18 U.S.C. § 1014. Count III charged William and Mildred Glenn with violating 18 U.S.C. §§ 2 and 656, respectively.

William and Mildred Glenn subsequently were found guilty by a jury. Judgments of conviction were entered against them by the District Court on January 30, 1987.

F & D filed the present action in the U.S. District Court for the Western District of Pennsylvania at C.A. No. 88-258 on February 4, 1988. Thereafter, William Glenn filed a voluntary Chapter 13 petition in this Court. The petition subsequently was withdrawn. On June 24, 1988, William and Mildred Glenn filed a voluntary Chapter 11 petition in this Court at Bankruptcy No. 88-1665.

## II. MOTION IN LIMINE

By Order of Court dated June 7, 1989, trial of this action was scheduled to be started and completed on August 30, 1989. Moments before trial was scheduled to begin, Defendants William and Mildred Glenn presented the Court with what is titled "Motion In Limine To Dismiss". The motion could be more artfully drawn, as at times it is difficult to follow. It would appear Defendants are claiming that F & D's action should be dismissed because: (1) F & D lacks standing to bring this action; and (2) F & D's action is barred by the applicable statute of limitations.

Both contentions are without merit. Accordingly, the Motion In Limine To Dismiss will be denied for the following reasons.

---

**1.** In light of this finding, it will not be necessary to determine whether the conveyance was also made with actual intent to defraud William Glenn's creditors.

## A) *Lack of Standing*

█ The contention that F & D lacks standing to bring this action relies on the erroneous assumption that its claim is based on 11 U.S.C. § 548(a), which provides in pertinent part that:

(a) The *trustee* may avoid any transfer of an interest of the debtor in property ... that was made or incurred in or within one year before the filing of the petition, if the debtor voluntarily ...—

(1) made such transfer ... with actual intent to hinder, delay, or defraud any entity to which the debtor was ..., on ... the date that such transfer was made, ... indebted; or

(2)(A) received less than a reasonably equivalent value in exchange for such transfer; and

(B)(i) was insolvent on the date such transfer was made ..., or became insolvent as a result of such transfer ...

(Emphasis added.)

The Complaint and the prior procedural history of this case indicate that F & D's action is based on Pennsylvania's Fraudulent Conveyance Act, 39 Pa.C.S.A. §§ 351 *et seq.*, rather than 11 U.S.C. § 548(a). F & D states in the preamble of the Complaint that subject-matter jurisdiction is based on diversity of citizenship and the required amount in controversy. No indication is given that jurisdiction arises under federal law. Also, this action originally was brought at C.A. No. 88–258 in the District Court on February 4, 1988, approximately five (5) months *before* William and Mildred Glenn filed their Chapter 11 petition in Bankruptcy Court. There would have been no basis for F & D to bring an action under the Bankruptcy Code when the Glenns had not yet filed their petition in bankruptcy. Finally, there is nothing in the Fraudulent Conveyance Act which would indicate that F & D, a creditor of William Glenn, lacks standing to bring its action. Indeed, the Act provides that a *creditor* whose claim has not yet matured may bring an action to set aside a fraudulent conveyance. *See* 39 Pa. C.S.A. § 360 (1954).

## B) *Statute of Limitations*

█ Actions brought under the Fraudulent Conveyance Act are governed by the two-year statute of limitations set forth at 42 Pa.C.S.A. § 5524(3) (Supp.1989). *See In re Penn Packing Co.*, 42 B.R. 502, 505 (Bankr.E.D.Pa.1984). The conveyance at issue in this case occurred on April 30, 1985. The instant action was commenced on February 4, 1988, well in excess of two (2) years after the conveyance. Even so, this action will not be dismissed for that reason.

FED.R.CIV.P. 8 applies in adversary proceedings. *See* BANKRUPTCY RULE 7008(a). FED.R.CIV.P. 8(c) provides in relevant part as follows:

*Affirmative Defenses.* In pleading to a preceding pleading, a party shall set forth affirmatively ... *statute of limitations*, ... and any other matter constituting an avoidance or affirmative defense ... (Emphasis added.)

█ As a general matter, an affirmative defense that has not been pleaded is deemed waived. *See Satchell v. Dilworth*, 745 F.2d 781, 784 (2nd Cir.1984). The reason for this rule is to put plaintiff on notice, *well in advance of trial*, that a defendant intends to pursue a defense that is in the nature of an avoidance. *See Hardin v. Manitowoc–Forsythe Corp.*, 691 F.2d 449, 458 (10th Cir.1982).

This rule is not iron-clad, however. Failure to plead an affirmative defense need not result in its waiver when the policy behind the rule is not violated. *See* 2A Moore's Federal Practice, ¶ 8.27[3] at 186 (1989); *also*, 5 Wright & Miller, Federal Practice and Procedure, § 1278 at 344 (1969). For instance, if the matter is raised in the trial court in a manner which does not result in unfair surprise or prejudice, technical failure to comply with FED.R. CIV.P. 8(c) need not be fatal. *See Bull's Corner Restaurant, Inc. v. Director of Federal Emergency Management Agency*, 759 F.2d 500, 502 (5th Cir.1985).

Defendants failed to raise the statute of limitations as a defense, either expressly or implicitly, in any of the pleadings. The matter was raised for the first time mo-

ments before trial was scheduled to begin. Their motion to dismiss on the ground that F & D's action is barred by 42 Pa.C.S.A., § 5524 (Supp.1989) must be denied because the manner in which it was raised violated the policy behind the rule in that it unfairly surprised and/or prejudiced F & D.

■ While the Federal Rules of Civil Procedure determine the manner and time in which affirmative defenses must be raised and when waiver occurs in a diversity action, state law determines the nature of such defenses. *See Morgan Guaranty & Trust Co. of New York v. Blum*, 649 F.2d 342, 345 (5th Cir.1981).

■ According to Pennsylvania law, the statute of limitations in a fraud action begins to run from the date of the fraudulent act complained of, unless such fraud had been actively concealed by the wrongdoer. *See Turtzo v. Boyer*, 370 Pa. 526, 88 A.2d 884, 885 (1952). The statute of limitations therefore began to run in this case on April 30, 1985, unless the Glenns actively concealed the alleged fraud.

■ If the purported fraud which gives rise to the action had been actively concealed, the statute of limitations is tolled until it is discovered or until it might have been discovered had due diligence been exercised. *See F.D.I.C. v. Ciaffoni*, 176 Pa.Super. 91, 107 A.2d 211, 213 (1954). Once the statute of limitations has been pleaded, the burden shifts to the party bringing the action to demonstrate that the action was timely. *See Metropolitan Edison Co. v. Pennsylvania P.U.C.*, 62 Pa. Cmwlth. 460, 437 A.2d 76, 84 n. 8 (1981). The plaintiff must show that reasonable efforts were made to protect its interest and must explain why it was unable to discover the operative facts for the cause of action sooner than it did. *See Bickell v. Stein*, 291 Pa.Super. 145, 435 A.2d 610, 612 (1981).

F & D had the burden in this case of showing that it made reasonable efforts to discover the alleged fraudulent conveyance and to explain why it did not discover the purported fraud in time to bring its action within two years of the fraud. F & D was unfairly surprised and prejudiced by the motion to dismiss in that it had no realistic opportunity to prove that defendants had actively concealed the fraud and to explain why it had not discovered it sooner than it did. Such matters are factual, not legal, and presumably would require witnesses and/or documentary evidence. F & D had no reason to expect to produce witnesses and/or documentary evidence when it appeared in court at the scheduled time for trial on the merits. Clearly, F & D was unfairly surprised and prejudiced as it had no opportunity to investigate, ascertain and submit the needed testimony. Accordingly, Defendants' motion to dismiss on the ground that the applicable statute of limitations had expired must be denied.

### III. ANALYSIS

F & D maintains that the conveyance of April 30, 1985 was fraudulent under 39 Pa.C.S.A. § 354 (1954), which provides in relevant part as follows:

> Every conveyance made ... by a person who is or will be rendered insolvent, is fraudulent as to creditors, without regard to his actual intent, if the conveyance is made ... without fair consideration.

At least two requisites must be satisfied in order for a conveyance to be fraudulent under this provision: insolvency and lack of fair consideration.

■ A person is insolvent under the Act when the present, fair, salable value of their assets is less than the amount required to pay their probable debts as they become absolute and matured. 39 Pa.C.S.A. § 352(1) (1954). Insolvency under the Act is broader than insolvency in bankruptcy, which is purely mathematical and results when the aggregate value of a debtor's property is less than their liabilities. *See Larrimer v. Feeney*, 411 Pa. 604, 192 A.2d 351, 353 (1963). One is insolvent under the Act if the *present* salable value of one's assets is less than the amount required to pay existing debts *as they mature*. *Fidelity Trust Co. v. Union National Bank*, 313 Pa. 467, 169 A. 209, 213 (1933).

■ Consideration given in exchange for a conveyance of property is "fair" when it is given as a fair equivalent and in good faith. *See* 39 Pa.C.S.A. § 353(a) (1954); *also, First National Bank of Marietta v. Hoffines,* 429 Pa. 109, 239 A.2d 458, 463 (1968). The matter of fairness must be determined from the standpoint of creditors. *Larrimer v. Feeney, supra* 192 A.2d at 354.

As has been noted, a Confession of Judgment against William Glenn had been obtained by NWNB on December 20, 1984, approximately four (4) months prior to the conveyance. As such, it constituted a debt of his.

■ If the person conveying the property was in debt—i.e., owed a legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent (39 Pa.C.S.A. § 351 (1954))—*at the time of a conveyance,* the burden shifts to the grantee(s) to prove, by clear and convincing evidence, either that the grantor was not rendered insolvent as a consequence or that a fair consideration was given for the conveyance. *See First National Bank of Marietta, supra* 239 A.2d at 462.

■ The only consideration given in exchange for conveyance of the property located at 103 Haverford Road, which defendants themselves estimated to be worth in excess of $300,000.00, was the sum of one ($1.00) dollar and "love and affection". Such consideration, when viewed from the standpoint of William Glenn's creditors, is not a fair equivalent to the value of the property. It therefore follows that, unless the grantees—i.e., Mildred Glenn and Marcia Glenn—establish, by clear and convincing evidence, that William Glenn was not rendered insolvent as a consequence of the conveyance, the conveyance was fraudulent under 39 Pa.C.S.A. § 354 (1954). They must prove that the value of William Glenn's assets, *at the time of the conveyance, see Angier v. Worrell,* 346 Pa. 450, 31 A.2d 87, 88 (1943), was greater than the total amount due under the Confession of Judgment entered on December 20, 1984.

Mildred and Marcia Glenn attempted to prove at trial that the fair market value of William Glenn's assets, as of April 30, 1985, was equal to or greater than $373,992.50. They offered evidence concerning the fair market value of the following assets of his: (1) real property located at 1401–1403 Swissvale Avenue, Pittsburgh, Pennsylvania; (2) a liquid deposit account at Pittsburgh National Bank ("PNB"); (3) NWNB stock owed by William Glenn; and (4) the net worth of Glenn Electric Co., Inc. These items will be considered *ad seriatim.*

### (1) *1401–1403 Swissvale Avenue*

William Glenn owned property located at 1401–1403 Swissvale Avenue, Pittsburgh, PA. Mildred Glenn had conveyed her interest in the property to him some time prior to the loan from NWNB in order that his loan application could be approved. Had she retained an interest in the property, the loan could not have been made. The property was pledged by William Glenn as security for the loan.

Mr. Glenn testified, and the Court so finds, that the fair market value of this property was $80,000.00 as of April 30, 1985.

### (2) *Liquid Deposit Account*

William and Mildred Glenn had a Liquid Deposit Fund at PNB. The balance in the account as of April 30, 1985 was $38,746.59. William Glenn owned an undivided one-half (½) interest in that account valued at $19,373.29.

### (3) *NWNB Stock*

William Glenn owned 2,000 shares of NWNB stock prior to December 4, 1984. He used at least a portion of the proceeds of the loan to purchase an additional 16,000 shares of NWNB stock in December of 1984 and January of 1985 from various individuals and corporations for sums ranging from a low of $7.00 to a high of $10.00 per share.

The relevant time period, however, is not December of 1984 and January of 1985, when William Glenn purchased the shares, but rather April 30, 1985, when the conveyance at issue occurred. Mildred Glenn, who at the time was President of NWNB, testified that the book value of NWNB

stock was $13.20 per share. Its book value, however, is not necessarily probative of the price at which the stock was trading. The most realistic indication of its value that was offered into evidence by Defendants was the NQB Monthly Price Report for May of 1985, a listing of the high and low prices at which NWNB had traded during April of 1985. According to NQB Monthly Price Report for May of 1985, the highest reported price at which NWNB traded in April of 1985 was $5.50 per share.

The Court finds that $5.50 per share was the value of NWNB stock on April 30, 1985, and that William Glenn's 18,000 shares had a value of $99,000.00 on that date.

#### (4) *Glenn Electric Co., Inc.*

William Glenn owns ninety-eight percent (98%) of the stock of Glenn Electric Co., Inc. On December 31, 1984, he personally prepared the following document:

William C. Glenn Electric Co., Inc.
Balance Sheet
As of December 31, 1984

Assets

| | | |
|---|---|---|
| Cash | $ 40,112.25 | figures used herein |
| Accounts Receivable | 30,000.00 | represent replace- |
| Inventory | 141,611.00 | ment costs for |
| Machinery and Equipment | 52,465.12 | machinery, equip- |
| Auto, Trucks and Trailer | 61,111.47 | ment, furniture, |
| Furniture and Fixtures | 9,325.71 | etc. |
| Total Assets | | $334,625.55 |

Liabilities

| | | |
|---|---|---|
| Accounts Payable | $ 1,360.00 | |
| Total Liabilities | | $ 1,360.00 |
| Net Worth | | $333,265.55 |
| Total Liabilities and Net Worth | | $334,625.55 |

NOT LISTED HEREIN IS THE DEBT RELATIONSHIP OF GLENN ELECTRIC CO., INC. TO WILLIAM GLENN PERSONALLY.

---

The value of the Swissvale Avenue property at the relevant time was $80,000.00. The Liquid Deposit Fund contained $38,746.59, giving Mr. Glenn the benefit of a one hundred percent (100%) interest. The value of NWNB stock owned by William Glenn was $99,000.00. The total value of these assets, as of April 30, 1985, was $217,746.59. However, a Confession of Judgment against him in the amount of $373,992.50 was in effect at that time. Thus, in order for William Glenn to have been solvent as of that date, the net worth of Glenn Electric would have to be at least $156,245.91.

According to the above balance sheet, the net worth of Glenn Electric as of December 31, 1985 was $333,265.55. By his own admission, however, this business was inactive and had no contracts and this figure was grossly inflated. As is indicated on the balance sheet, the value of his inventory, machinery, equipment, autos, trucks, trailers, and furniture was based on the cost of replacing those items, not on their fair market value. Mr. Glenn admitted un-

der oath in an unrelated legal proceeding brought by him against NWNB that he had overvalued these assets by $150,000.00. This Court finds that Mr. Glenn did in deed overvalue these assets by at least $150,-000.00. Thus, by Mr. Glenn's own admission, the net worth of Glenn Electric as of December 31, 1984 was, at most, $183,-265.55.

The Court further finds that even this figure is inflated and that the net worth of Glenn Electric as of December 31, 1984, was considerably less than $183,265.55.

For instance, Mr. Glenn testified that only $10,125.25 of the cash listed on the balance sheet was kept in a bank account. He stated that he kept the remaining $30,-000.00 in cash in a safe deposit box. Mr. Glenn offers no supporting documentation evidencing the existence of this cash. No testimony was offered as to its origin or the reason this sum was placed in this box. Moreover, he testified that the cash was still in the safe deposit box some four (4) months later on April 30, 1985. The Court finds Mr. Glenn's testimony incredible and determines that he did not have $30,000.00 in cash on April 30, 1985. Although he appears to have a limited formal education, Mr. Glenn had been a successful business-man for some time and obviously is of above-average intelligence. It is not believ-able that a person with Mr. Glenn's busi-ness acumen would have kept $30,000.00 in a safe deposit box for four (4) months, where it would draw no interest. This testimony appears to be a self-serving cre-ation to push closer to proving solvency in this case. The Court's adjustment reduces the net worth of Glenn Electric by $30,-000.00 to $153,365.55, which is less than what Glenn Electric would have to be worth in order for Mr. Glenn to be solvent under the Act.

The matter does not end there, however. The net worth of Glenn Electric as of De-cember 31, 1984, was considerably less than $153,365.55. Mr. Glenn, in a further attempt to justify the figures on the bal-ance sheet, testified that included in Glenn Electric's inventory on December 31, 1984, were: 800 fluorescent light fixtures worth $100.00 each; 400 to 500 incandescent light fixtures worth $80.00 each; 10,000 feet of conduit worth $150.00 per hundred feet; 1,000 feet of raceway worth $200.00 to $300.00 per hundred feet; "thousands" of receptacles worth $2.00 each; 2,000 switches worth at least $2.00 each; 50,000 feet of wire worth between $29.00 and $100.00 per thousand feet, and 300 to 400 junction boxes worth between $2.00 and $200.00 each. The Court finds it incredible that Glenn Electric, which was a small, inactive operation, would have had as much inventory on hand as Mr. Glenn claimed. The Court wonders why this readily avail-able equipment would be purchased in ad-vance of a non-existent job and is mystified as to where this mountain of equipment would be stored. The value of the inventory, if it existed at all, was worth considera-bly less than claimed, even after taking into account Mr. Glenn's own admission as to overvaluation.

Finally, the relevant date is April 30, 1985, not December 31, 1984. The evidence overwhelmingly indicates that Glenn Elec-tric was worth even less on April 30, 1985 than it was on December 31, 1984. Accord-ing to Mr. Glenn, Glenn Electric was inac-tive during that year. Although an exact dollar amount cannot be determined, the net worth of Glenn Electric on April 30, 1985 was substantially less than $150,-000.00

It follows from the above that the *total* value of Mr. Glenn's assets on April 30, 1985 was substantially less than $367,-000.00, and that he was insolvent for pur-poses of 39 Pa.C.S.A. § 354.

39 Pa.C.S.A. § 360 (1954) provides that: Where a conveyance made ... is fraudu-lent as to a creditor whose claim has not matured, he may proceed, in a court of competent jurisdiction, against any per-son against whom he could have proceed-ed had his claim matured, and the court may:

(a) Restrain the defendant from dis-posing of his property;

(b) Appoint a receiver to take charge of the property;

(c) Set aside the conveyance ...; or

(d) Make any order which the circumstances of the case may require.

This provision has been used to set aside a conveyance which is fraudulent under 39 Pa.C.S.A. § 354 (1954). *See Commonwealth National Bank v. Miller*, 293 Pa. Super. 104, 437 A.2d 1012, 1014 (1981).

It being the case that the conveyance of April 30, 1985 was fraudulent under the Act, and that F & D is a creditor of William Glenn, whose debt had not yet matured, F & D's request that said conveyance be set aside will be granted.

An appropriate Order will be issued.

### ORDER OF COURT

AND NOW at Pittsburgh in said District this 16th day of October, 1989, in accordance with the foregoing Memorandum Opinion of this same date, it is hereby ORDERED, ADJUDGED and DECREED that the Motion In Limine by Defendants William C. Glenn and Mildred Glenn is DENIED.

IT IS FURTHER ORDERED that the conveyance of April 30, 1985 of real property located at 103 Haverford Road, Pittsburgh, Pennsylvania, by William Glenn and Mildred Glenn to Mildred Glenn and Marcia Glenn is set aside and declared a nullity and is null and void.