CONSTITUTION BANK

v.

Anthony J. DiMARCO and Rose DiMarco.

Civ. A. No. 92–CV–5670.

United States District Court, E.D. Pennsylvania.

June 21, 1993.

Mark Kearney, John M. Elliott, Gerard P. Egan, Elliott, Vanaskie & Riley, Blue Bell, PA, for plaintiff.

Henry F. Reichner, Reed, Smith, Shaw & McClay, Thomas C. Zielinski, Christopher K. Walters, Cozen & O'Connor, Philadelphia, PA, for defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

This civil action is once again before this Court upon Motions of the Defendants, Anthony and Rose DiMarco for Judgment on the Pleadings. In accordance with the rationale set forth below, the motions are granted in part and denied in part.

## I. HISTORY OF THE CASE

According to the factual allegations contained in the plaintiff's complaint, in February, 1981 Defendant Anthony J. DiMarco and his son, Anthony R. DiMarco (hereinafter "DiMarco, Jr.") formed an entity known as the DiMarco Development Group which had as its purpose the acquisition and development of real estate and restaurant businesses in the regions of Philadelphia and Southern New Jersey.[1] In 1989, however, the DiMarcos began to experience severe financial difficulties in their real estate and restaurant ventures, which necessitated the borrowing of large sums of money from numerous banks and lending institutions, including Meridian and Constitution Banks. In March and April, 1990, the Plaintiff bank was contacted by representatives of Meridian Bank and DiMarco, Jr. concerning DiMarco, Jr.'s obtaining a $300,000 demand loan to be secured by two homes then under construction at a development project known as "Hidden Creek," as well as by a personal guarantee from DiMarco, Jr. As part of the application process, Constitution Bank required DiMarco, Jr. to submit a Statement of Financial Condition and that statement was ultimately prepared by the accounting firm of Landsburg, Platt & Flax. According to the plaintiff, however, the financial statement ostensibly did not reflect that DiMarco, Jr. had personally guaranteed several million

---

1. At about the same time, Mr. DiMarco, Jr. was also engaged in a similar business venture with one Joseph V. DiLullo. As a consequence there- of, Mr. DiMarco, Jr. had given several personal loan guarantees in order to generate funds and other monies for the operation of this venture.

dollars in loans which had been extended to both the DiMarco Development Group and the DiLullo. venture.

Plaintiff subsequently loaned the sum of $300,000 to "DiMarco Development Group at Hidden Creek" on April 19, 1990. Although that loan was eventually repaid in full, on October 1, 1990, Constitution Bank, allegedly in reliance upon a letter from the Landsburg firm that indicated that there had been no change in DiMarco, Jr.'s financial condition since its last report, extended a second $300,000 line of credit to the DiMarco Development Group. That line of credit, however, was secured only by a personal guarantee from DiMarco, Jr. and his wife Janice. Shortly after plaintiff extended this second loan, Joseph DiLullo filed for bankruptcy protection thereby exposing Anthony R. and Janice DiMarco to several hundred thousand dollars in indebtedness as the result of the loan guarantees which they had given on behalf of the DiMarco–DiLullo ventures.

By way of its complaint against Anthony and Rose DiMarco,[2] the plaintiff bank further contends that in July and October, 1990, DiMarco, Jr. and his wife, upon the advice of their attorneys and accountants, gave two mortgages on their home and property to the senior DiMarcos in the amounts of $200,000 and $100,000 respectively. According to the plaintiff, however, Anthony and Rose DiMarco refrained from recording these mortgages until October 30, 1990 so as to ensure that DiMarco Development would be able to procure the $300,000 line of credit. The complaint goes on to allege that after the junior DiMarcos defaulted on their repayment obligations to Constitution Bank, they assigned their remaining assets to Anthony and Rose DiMarco and then filed for bankruptcy protection. The remaining counts of the complaint seek to recover damages from and ask for the imposition of a constructive trust against the senior DiMarcos under the common law theories of fraud, misrepresentation, civil conspiracy, negligent misrepresentation, aiding and abetting and for violations of the Pennsylvania Uniform Fraudulent Conveyances Act, 39 P.S. § 351, *et seq.*

## II. DISCUSSION

### A. *Standard Governing Motions for Judgment on the Pleadings Pursuant to Fed.R.Civ.P. 12(c).*

 It is generally recognized that Rule 12(c) may be used as a vehicle for raising various 12(b) defenses after the pleadings are closed, including the argument that a complaint fails to state a claim upon which relief can be granted. In ruling on such a motion, the courts will apply the same standards for granting the appropriate relief as would have been applied had the motion been brought under Fed. R.Civ.P. 12(b)(1), (6) or (7). *Lombardo v. State Farm Mutual Auto Insurance Co.,* 800 F.Supp. 208, 211 (E.D.Pa.1992); *Crooked Lake Development, Inc. v. Emmet County,* 763 F.Supp. 1398, 1400 (W.D.Mich.1991).

 Fed.R.Civ.P. 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings ..." The caselaw construing this rule provides a clear directive to the district courts that in considering such a motion, all of the factual allegations of the non-moving party's pleadings must be accepted as true and construed in the light most favorable to it and all controverted assertions of the movant must be taken to be false. In this fashion, the courts hope to insure that

---

**2.** Although the plaintiff's complaint names as defendants Thomas M. Dalton, C.P.A., the Landsburg, Platt accounting firm and the DiMarcos' attorneys, via Memorandum and Order dated December 22, 1992, those defendants' were dismissed from this case on the grounds that plaintiff had failed to state a federal claim upon which relief could be granted under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), (d).

Thereafter, on March 3, 1993, the motion for partial judgment on the pleadings of Rose and Anthony DiMarco as to these federal law claims was also granted for the same reasons. Insofar as the senior DiMarcos are citizens of the State of New Jersey while Constitution Bank is a Pennsylvania-chartered banking institution, this court retains jurisdiction over the common law claims by virtue of the parties' diversity of citizenship. 28 U.S.C. § 1332.

the rights of the nonmoving party are decided as fully and fairly on a Rule 12(c) motion as if there had been a trial. *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir.1991); *Haynesworth v. Miller*, 820 F.2d 1245, 1249, n. 11 (D.C.Cir.1987); 5A Wright & Miller, *Federal Practice and Procedure: Civil 2d* § 1368. An order granting a motion for judgment on the pleadings is therefore properly entered only where there is no dispute as to the material facts and it is obvious that one party is entitled to judgment as a matter of law. *Institute for Scientific Information, Inc. v. Gordon and Breach*, 743 F.Supp. 369, 373–374 (E.D.Pa.1990); *Damron v. Smith*, 616 F.Supp. 424, 425 (E.D.Pa.1985).

B. *Standing to Sue Under the Pennsylvania Uniform Fraudulent Conveyances Act, 39 P.S. § 351, et seq.*

Preliminarily, Defendants assert that the plaintiff bank has no standing to sue them under the Pennsylvania Uniform Fraudulent Conveyances Act because it could only have raised its claim (that the mortgage interests which the junior DiMarcos gave them on their home were fraudulent) in their son and daughter-in-law's bankruptcy proceedings. After careful consideration of the facts and existing law in this area, we are constrained to agree with the defendants' contention and judgment as a matter of law shall therefore be entered in their favor as to Count XI of the plaintiff's complaint.

The law is clear that under the Bankruptcy Code, 11 U.S.C. § 548, "[t]he trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the [bankruptcy] petition if the debtor voluntarily or involuntarily made the transfer or incurred the obligation with the ... intent to .... defraud any entity to which it was or became indebted or received less than a reasonably equivalent value in exchange for such transfer ... and was insolvent on the date of the transfer ... or became insolvent as a result [thereof]." 11 U.S.C. § 548(a).

It is equally well established that under § 362(a) of the Bankruptcy Code, the filing of a petition for voluntary, joint or involuntary bankruptcy under 11 U.S.C. §§ 301, 302 or 303 automatically stays *all* proceedings to collect the underlying debt in order that the bankrupt debtor may be given a breathing spell from creditors and the financial pressures that drove him into bankruptcy and to allow him to attempt a repayment or reorganization plan. *See: Assoc. of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3rd Cir.1982); *In re Holtkamp*, 669 F.2d 505, 508 (7th Cir.1982). In addition, the stay protects creditors by preventing particular creditors from acting unilaterally in self-interest to obtain payment from a debtor to the detriment of other creditors or, in other words, it protects the bankrupt's estate from being eaten away by creditors' lawsuits and seizures of property before the trustee has a chance to marshall the assets and distribute them equitably. *Maritime Electric Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3rd Cir.1991).

It is in keeping with this rationale that the courts have repeatedly held that under the bankruptcy code, only trustees in bankruptcy may bring an action on behalf of the estate to avoid a preference or to set aside a fraudulent conveyance. *See, e.g.: In re Natchez Corp.*, 953 F.2d 184, 187 (5th Cir. 1992); *Delgado Oil Co. v. Torres*, 785 F.2d 857, 860 (10th Cir.1986); *In re Auxano, Inc.*, 87 B.R. 72, 73 (Bankr.W.D.Mo.1988), citing *In re Monsour Medical Center*, 5 B.R. 715, 718 (Bankr.W.D.Pa.1980); *In re Bacher*, 47 B.R. 825, 829 (Bankr.E.D.Pa. 1985).

Under the Pennsylvania Uniform Fraudulent Conveyances Act, 39 P.S. § 351, *et seq.*, however, a creditor *is* empowered to bring an action to have a fraudulent conveyance set aside or disregarded and it is the provisions of this Act which the plaintiff in the case at bar has invoked in Count XI of its Complaint. 39 P.S. §§ 359, 360. From all appearances, a creditor will not be divested of its standing to sue under the Pennsylvania Act by the debtor's subsequent filing of a bankruptcy

petition. *See: In re Glenn,* 108 B.R. 70, 73 (Bankr.W.D.Pa.1989).

■ The instant action, on the other hand, presents what appears to be a unique issue in that Constitution Bank filed this suit against Anthony and Rose DiMarco some six weeks *after* Anthony and Janice DiMarco filed for bankruptcy protection. While we recognize that plaintiff premises Count XI solely upon Pennsylvania law, we nevertheless can reach no other conclusion but that to permit the plaintiff to maintain a claim for relief under this theory would be to permit it to effectively circumvent the bankruptcy code's policy and the protections to be afforded by it to the junior DiMarco's other creditors. *In re Pointer,* 952 F.2d 82, 87–88 (5th Cir.1992). We thus find that Plaintiff does not have the requisite standing to maintain its cause of action to set aside the mortgage interest conveyances of July 12, 1990 and October 16, 1990 [3], and Defendants' Motion for Judgment on the Pleadings is therefore granted as to Count XI of the complaint. *Nebraska State Bank v. Jones,* 846 F.2d 477, 478 (8th Cir.1988).

C. *Sufficiency of Plaintiff's Complaint to State Claims for Relief for Fraudulent and Negligent Misrepresentation, Civil Conspiracy and Aider and Abettor Liability.*

1. *Fraudulent Misrepresentation.*

Defendants next assert that Count III of Constitution Bank's complaint lacks the specificity required under Fed.R.Civ.P. 9(b) to state a cause of action against them for fraud and thus they are entitled to the entry of judgment in their favor on that count as well. We disagree.

■ To state a cause of action for fraud or fraudulent misrepresentation under Pennsylvania law, the plaintiff must plead (1) a misrepresentation; (2) a fraudulent utterance thereof; (3) intention by the maker that the recipient will thereby be induced to act; (4) justifiable reliance by the recipient upon the misrepresentation; and (5)

damage to the recipient as the proximate result of the misrepresentation. *Sowell v. Butcher & Singer, Inc.,* 926 F.2d 289, 296 (3rd Cir.1991); *Mann v. J.E. Baker Co.,* 733 F.Supp. 885, 889 (M.D.Pa.1990); *Sevin v. Kelshaw,* 417 Pa.Super. 1, 611 A.2d 1232, 1236 (1992); *Bash v. Bell Telephone Co.,* 411 Pa.Super. 347, 601 A.2d 825, 831 (1992).

■ Under Fed.R.Civ.P. 9(b), the elements of fraud must be pleaded with particularity. That Rule states:

> "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

It has been held that the purpose of Rule 9(b) is to place the defendant on notice of the precise misconduct with which it is charged and to safeguard defendants against spurious charges of immoral and fraudulent behavior. *United States by Department of Housing and Urban Development ex rel. Givler v. Smith,* 775 F.Supp. 172, 181 (E.D.Pa.1991). Bearing in mind that Rule 9(b) must be harmonized with Rule 8(a)(2) which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," the Third Circuit has cautioned that focusing exclusively on Rule 9(b)'s "particularity" language is too narrow an approach and subjects the allegations of fraud to too strict a scrutiny. *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.,* 742 F.2d 786, 791 (3rd Cir.1984); *Berk v. Ascott Investment Corp.,* 759 F.Supp. 245, 254 (E.D.Pa.1991). Thus, while it is true that date, place and time allegations will provide precision, substantiation and notice, nothing in the rule requires them. Rather, the requirements of Rule 9(b) are met when there is sufficient identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer to the allegations. *Id.* at 254, citing *Seville*

---

**3.** Since the movants have neither pleaded nor in any way raised the statute of limitations defense to this count of the plaintiff's complaint, it shall not be addressed here. *See: In re Glenn, supra* at 73–74.

at 791 and *Denny v. Carey*, 72 F.R.D. 574, 578 (E.D.Pa.1976).

Applying these principles to the matter now before the court, we must at the outset observe that this is the first juncture at which the defendants have sought to challenge the allegations of fraud against them. While the fact that the plaintiff's complaint was not the subject of an earlier motion to dismiss or motion for more definite statement is not necessarily dispositive of the now-pending motions for judgment on the pleadings, the fact that the defendants were apparently able to answer the complaint is nevertheless an element to be considered in ruling on the defendants' specificity argument.

Moreover, in reviewing the plaintiff's complaint in the light most favorable to it, as the non-movant, it appears that Anthony J. and Rose DiMarco, acting in concert with their son, daughter-in-law and their attorneys and accountants and in an effort to induce Constitution Bank into giving the DiMarco Development Group a $300,000 line of credit, fraudulently misrepresented their son and daughter-in-law's true financial condition and did not disclose that they had received mortgage interests in the amount of $300,000 on the junior DiMarcos' residence. (Complaint Paragraphs 36, 39–40, 42, 129–130) Paragraphs 41, 43–47 and 131 of the complaint further allege that the plaintiff bank justifiably relied upon the defendants' fraudulent misrepresentations and statements of financial condition in deciding to extend the line of credit to the DiMarco Development Group which resulted in its loss of the monies advanced by it when the junior DiMarcos filed for bankruptcy. These allegations are, we find, sufficiently specific to identify the circumstances underlying the fraud and to put the defendants on notice of the claim and to formulate a defense thereto. The motions for judgment on the pleadings as to Count III are therefore denied.

### 2. Negligent Misrepresentation.

Defendants next contend that Plaintiff's complaint fails to set forth the elements necessary to state a claim upon which relief can be granted under the theory of negligent misrepresentation. For the reasons which follow, we must agree with this assertion.

Essentially, the only distinction between the torts of fraudulent and negligent misrepresentation is the state of mind of the purported actor(s); the key element to both of these causes of action is that a false representation must have been made. *Monkelis v. Scientific Systems Services, Inc.*, 677 F.Supp. 378, 384 (W.D.Pa.1988) citing *Linda Coal & Supply Co. v. Tasa Coal Co.*, 416 Pa. 97, 102, 204 A.2d 451, 453 (1964) and *Little v. York County Earned Income Tax Bureau*, 333 Pa.Super. 8, 18, 481 A.2d 1194, 1199 (1985). Stated otherwise, a "negligent" misrepresentation is a misrepresentation which arises from a want of "reasonable care or competence in obtaining or communicating information," as opposed to a "fraudulent" misrepresentation which involves either a "knowing" or a "reckless" communication of a misrepresentation. *Woodward v. Dietrich*, 378 Pa.Super. 111, 548 A.2d 301 (1988).

Indeed, Pennsylvania subscribes to the definition of negligent misrepresentation outlined in the Restatement (Second) of Torts § 552, which provides:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, *if he fails to exercise reasonable care or competence in obtaining or communicating the information.*

(2) Except as stated in Subsection (3), *the liability stated in Subsection (1) is limited to loss suffered*

(a) by the person or *one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it;* and

(b) through reliance upon it in a transaction that *he intends the information to influence or knows that the*

*recipient so intends or in a substantially similar transaction.*

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them. (emphasis supplied)

*See Generally: In re Meridian Securities Litigation*, 772 F.Supp. 223 (E.D.Pa.1991); *Browne v. Maxfield*, 663 F.Supp. 1193, 1202 (E.D.Pa.1987); *Woodward v. Dietrich, supra*, 548 A.2d at 308.

■ Instantly, reading the complaint in general and paragraphs 37, 39, 43–45, 49–51, 53, 59, 63, 65, 67, 70, 76–78, 86, and 151 in particular in the light most favorable to the bank, we find that there are allegations that Anthony J. and Rose DiMarco failed to disclose to Constitution Bank what they purportedly knew to be the truth concerning the financial condition of their son and daughter-in-law and DiMarco Development. Those paragraphs further aver (1) that the defendants made these misrepresentations in order to induce the plaintiff to extend the $300,000 line of credit to the DiMarco Development Group and to forego execution upon the junior DiMarcos's Guaranty Agreement in order to protect its loan; and (2) that the bank suffered the loss of the $300,000 loaned as a consequence. As has previously been stated, these allegations adequately state a claim upon which relief may be granted for *fraudulent* misrepresentation. Nowhere in the complaint, however, are there are any averments that the senior DiMarcos owed the plaintiff bank a duty to inquire into their son's financial condition or to provide accurate information concerning his financial health. Similarly, the complaint fails to allege that these defendants failed to exercise reasonable care or competence in fulfilling such a duty and in communicating this financial information to the plaintiff. Accordingly, this court has no alternative but to grant the defendants' motions for judgment on the pleadings with respect to Count VI of the plaintiff's complaint.

### 3. Civil Conspiracy and Aider and Abettor Liability.

Finally, Defendants argue that the complaint fails to plead the elements necessary to state a claim upon which relief may be granted under a theory of civil conspiracy and that inasmuch as Pennsylvania does not recognize a private cause of action for aider and abettor liability, they are entitled to the entry of judgment in their favor as a matter of law on Counts IV and IX as well.

■ It is well settled that civil conspiracy is actionable under Pennsylvania law when (1) an overt act is performed by a combination of two or more persons (2) in pursuit of a common purpose or design to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, and (3) actual legal damage results. *Gilbert v. Feld*, 788 F.Supp. 854, 862 (E.D.Pa.1992); *Smith v. Wagner*, 403 Pa.Super. 316, 588 A.2d 1308, 1311–1312 (1991); *Burnside v. Abbott Laboratories*, 351 Pa.Super. 264, 505 A.2d 973 (1985).

■ Whether Pennsylvania (or any other state) recognizes an independent civil cause of action in any form or in the form outlined in the Restatement (Second) of Torts § 876(b), on the other hand, is patently unclear. *See, e.g.: Petro–Tech, Inc. v. Western Company of North America*, 824 F.2d 1349, 1356–1357 (3rd Cir.1987); *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C.Cir.1983). That Section provides, in relevant part:

> **§ 876. Persons Acting in Concert**
> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> . . . .
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

*See Also: Jefferis v. Commonwealth of Pennsylvania*, 371 Pa.Super. 12, 537 A.2d

355, 358 (1988). In the event that such a cause of action is cognizable under state law, it is apparent that the plaintiff must plead and prove (1) that the defendants knew that Anthony R. and Janet DiMarco, their attorneys and accountants were effectively breaching a duty which they owed to the plaintiff bank in allegedly misrepresenting the junior DiMarcos' financial health and (2) that the senior DiMarcos substantially assisted their son and daughter-in-law, their attorneys and accountants in breaching that duty *or* that they gave substantial assistance and that in so doing that the defendants themselves breached a duty which they owed to the bank.

■ Again, reviewing the entire complaint in the most favorable manner to the non-moving bank and in light of the standards governing federal notice pleading, we find that it adequately (albeit verbosely) pleads the above-stated components of aiding and abetting and civil conspiracy. So saying, the defendants' motions for judgment on the pleadings are denied as to Counts IV and IX of the plaintiff's complaint.

For all of the foregoing reasons, the attached order is hereby entered.

### ORDER

AND NOW, this 21st day of June, 1993, upon consideration of the Motions of Defendants, Anthony J. and Rose DiMarco for Judgment on the Pleadings, it is hereby ORDERED that the Motions are GRANTED IN PART and DENIED IN PART and Judgment is hereby entered in favor of the Defendants and against the Plaintiff as a matter of law on Counts VI and XI of the Plaintiff's Complaint.