In re **COMMODORE BUSINESS MACHINES, INC., Debtor.**

**ALLEN–BRADLEY COMPANY, INC., Plaintiff,**

v.

**COMMODORE BUSINESS MACHINES, INC., Defendant.**

**Bankruptcy No. 94 B 42187 (JLG). Adv. No. 94–9238A.**

United States Bankruptcy Court, S.D. New York.

April 11, 1995.

Zalkin, Rodin & Goodman, New York City, for plaintiff Allen–Bradley Co., Inc.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendant Commodore Business Machines, Inc.

### MEMORANDUM DECISION ON MOTION TO DISMISS COMPLAINT

JAMES L. GARRITY, Jr., Bankruptcy Judge.

Allen–Bradley, Inc. ("Allen–Bradley") commenced this adversary proceeding to impose a constructive trust upon the proceeds realized by Commodore Business Machines, Inc. ("Commodore") from the court authorized sale of its factory located in Norristown, Pennsylvania, the contents thereof, and the 13.5 acres of real property on which it sits. [Hereinafter, the factory, its contents and real property collectively will be referred to as the "Site"; the real property separately will be referred to as the "Real Estate".] Commodore has moved pursuant to Bankruptcy Rule 7012 and Fed.R.Civ.P. 12(b)(6) to dismiss the complaint. For the reasons stated below, the motion is granted.[1]

---

**1.** Our subject matter jurisdiction of this adversary proceeding is predicated on 28 U.S.C. §§ 1334(b) and 157(a) and the "Standing Order of Referral of Cases to Bankruptcy Judges of the Southern District of New York" dated July 10, 1984 (Ward, Acting C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

*Facts* [2]

On May 4, 1994, an involuntary petition for relief under chapter 7 of the Bankruptcy Code ("Code") was filed against Commodore. On May 24, 1994, Commodore consented to entry of an order for relief under chapter 11 of the Code. Commodore has not operated post-petition, although pursuant to 11 U.S.C. §§ 1107 and 1108 it remains in possession and control of its assets as a debtor-in-possession. It is in the process of selling off its assets and has filed a liquidating plan of reorganization.

In 1974, Allen–Bradley owned the Site which it rented to MOS Technologies, Inc. ("MOS") pursuant to a lease dated November 1, 1970. Complaint ¶ 11.[3] On January 31, 1975, MOS sold its business and assets (including the lease) to PJM Technology, Inc. ("PJM"). Thereafter, PJM changed its name to MOS Technology, Inc. ("MOS II"). Complaint ¶ 13. Pursuant to a Stock Acquisition Agreement dated November 2, 1976, Commodore purchased all of MOS II's stock. In 1978, Allen–Bradley sold the Site to MOS II. Complaint ¶¶ 14–15. In September 1979, the Environmental Protection Agency (the "EPA") began an investigation into possible groundwater contamination at the Site resulting from a release of Trichloroethylene ("TCE") believed to have occurred in or about 1974. Complaint ¶ 15. In 1980, MOS II merged with Commodore. Complaint ¶ 14. The Site was placed on the EPA's National Priority List in 1987. Complaint ¶ 16. On or about October 9, 1992, the EPA issued a letter to Allen–Bradley notifying it that the EPA had determined it and Commodore to be responsible for the remediation of the groundwater contamination at the Site. That letter also demanded reimbursement of the EPA's past and future response costs. Complaint ¶ 17. On or about June 29, 1993, the EPA issued an administrative order pursuant to § 106(a) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9606(a), directing the parties to implement its September 29, 1992 Record of Decision for remediating the Site and to comply fully with the terms of that order. Complaint ¶ 18. On or about August 31, 1993, the EPA filed a lien against the Site to secure payment of certain remediation expenses it had incurred at the Site. *See* Complaint ¶ 27.

In 1993, Commodore sued MOS's insurer, Employer's Insurance of Wausau ("Wausau"), and its excess carriers, in Wisconsin state court alleging that pursuant to policies issued to MOS by Wausau in 1974 (the "Wausau Policies"), Wausau was bound to defend and indemnify Commodore, as successor to MOS, for any liability arising out of the EPA's demand for reimbursement of response costs. Complaint ¶ 22. On or about April 27, 1994, Commodore entered into a confidential agreement with Wausau (the "Insurance Settlement Agreement") settling all claims under the Wausau Policies, including Wausau's obligation to indemnify Commodore for the environmental claims asserted by the EPA. Complaint ¶ 23.

Allen–Bradley contends that to date it has expended approximately $600,000 remediating the Site.[4] Approximately $435,000 of

2. For purposes of this motion, we must assume the truth of the well plead allegations in Allen–Bradley's complaint. *See, e.g., Square D Co. v. Niagara Frontier Tariff Bureau,* 476 U.S. 409, 411, 106 S.Ct. 1922, 1924, 90 L.Ed.2d 413 (1986); *Frazier v. Coughlin,* 850 F.2d 129, 130–31 (2d Cir.1988). As necessary, we have cited to those allegations. The balance of the facts recited herein consist of what we understand to be undisputed background information.

3. "Complaint" refers to the Complaint filed on behalf of Allen–Bradley dated December 12, 1994.

4. The Complaint alleges that, pre-petition, Allen–Bradley incurred EPA response costs for its investigation and remediation of releases of hazardous substances at the Site in the amount of $1,067,858.47. Complaint ¶ 19. Through its Proof of Claim and Request for Payment of Administrative Expense, pursuant to 11 U.S.C. § 503, dated December 12, 1994, Allen–Bradley sought $1,067,858.47 as an unsecured pre-petition claim and approximately $14.5 million as an administrative priority claim. Complaint ¶ 19, n. 2. On or about January 12, 1995, Allen–Bradley filed an Amended Proof of Claim seeking $436,087.37 as an unsecured liquidated pre-petition claim, $7,588,360.00 as an estimated unsecured claim, and $165,142.51 as an administrative priority claim. By letter dated January 26, 1995, Allen–Bradley reduced its estimated claim to approximately $6,641,450.00. A copy of that letter is annexed as Ex. G to the Affidavit of William H. Schrag, Esq. ("Schrag Affidavit") submitted on behalf of Allen–Bradley in opposition to Commo-

that sum was spent pre-petition (of which $266,000 represents paid legal fees) and $165,000 was expended post-petition. By order we fixed January 17, 1995 as the last day for filing claims in this case. Allen–Bradley timely filed its claim. *See supra* n. 4. No claim has been filed by or on behalf of the EPA.

In September 1994, Commodore contracted to sell the Site to GMT Microelectronics Corp. ("GMT") for the sum of $4.3 million, subject to higher and better offers (the "GMT Agreement"). By order dated September 22, 1994, we authorized Commodore to retain Ross–Dove Corp., Inc. ("Ross–Dove") to market the Site in an effort to identify potentially higher and better offers. That order also fixed December 15, 1994, as the date for the hearing on the approval of the GMT Agreement. We conducted that hearing and by order dated December 16, 1994, we granted Commodore's request to sell the Site to GMT for $4.3 million pursuant to the terms of the GMT Agreement. Among other things, under that agreement GMT will pay up to $1 million in costs for satisfying certain environmental issues relating to the Site, including obtaining the EPA's release of its lien on the Site. Complaint ¶ 27. Commodore retains an option (but has no obligation) to satisfy costs relating to those environmental issues in excess of the $1 million. *Id.* The agreement further provides that GMT will not assume any liabilities, obligations or commitments of Commodore of any kind unless it does so in writing

and that the assets purchased are being conveyed free and clear of any lien, claim or encumbrance. Complaint ¶ 28.

The GMT Agreement does not allocate the consideration paid by GMT among the Site's components. Allen–Bradley contends that in the Ross–Dove Report of Sale [5], filed with the Court on December 15, 1994, $2.8 million of the purchase price is attributed to the personal property at the Site. From that it concludes that $1.5 million of the proceeds are attributable to the Real Estate.

### Discussion

■ In the single cause of action alleged in the complaint, Allen–Bradley seeks to impose a constructive trust on the proceeds from the sale of the Site.[6] Allen–Bradley contends that by remediating the Site in accordance with the EPA's administrative order, it facilitated the sale of the Site to GMT. It alleges that its efforts rendered the Site, otherwise valueless due to the environmental problems, saleable for at least the sum of $4.3 million. Complaint ¶ 31. Because Commodore's liquidating plan essentially will be funded by the Site proceeds, and the estate's liabilities greatly exceed its assets, Allen–Bradley contends that Commodore and the estate are being unjustly enriched at its expense. Complaint ¶¶ 33, 34.[7]

■ "A constructive trust is the formula through which equity finds expression. When property has been acquired in such

dore's motion to dismiss. Thereafter, Allen–Bradley further modified its claim by reclassifying its administrative claim to a general unsecured claim.

5. The "Report of Sale" is Ross–Dove's Report of Sale Of Auction Conducted November 4, 1994 At Norristown, Pennsylvania. A copy of that report is annexed as Ex. C to the Schrag Affidavit.

6. Although the complaint seeks to impose a constructive trust on all the sale proceeds, *see* Complaint p. 9, during argument of this motion, Allen–Bradley explained that it is seeking to impress a trust on only $1.5 million of the proceeds. That figure represents that amount of the proceeds attributed by Allen–Bradley to the Real Estate.

7. Among the assumptions underlying this litigation is that Allen–Bradley has an allowed contractual indemnification claim against Commo-

dore based on the MOS lease and at common law, and allowed statutory contribution claims against Commodore including those imposed by §§ 107(a) and 113(f) of CERCLA, 42 U.S.C. §§ 9607(a), 9613(f), for remediation costs it has incurred and will incur in the future at the Site. Complaint ¶ 20. For our purposes, we must assume that to be true. *See, e.g., Frazier v. Coughlin,* 850 F.2d at 130–31. Commodore vigorously disputes that allegation and has objected to the allowance of the claim. Commodore contends that Allen–Bradley does not have a valid claim under applicable non-bankruptcy law. Alternatively Commodore maintains that to the extent Allen–Bradley may have a claim, it is a contingent claim for reimbursement or contribution which must be disallowed under § 502(e)(1)(B) of the Code.

**78**

circumstances that the holder of legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." *Beatty v. Guggenheim Exploration Co.,* 225 N.Y. 380, 386, 122 N.E. 378 (1919); *see also Buchanan v. Brentwood Federal Savings & Loan Assn.,* 457 Pa. 135, 320 A.2d 117, 127 (1974) (quoting *Beatty* ). A constructive trust is an equitable remedy designed to prevent unjust enrichment. *XL Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.),* 16 F.3d 1443, 1449–50 (6th Cir. 1994); *Patrick & Wilkins Co. v. Reliance Ins. Co.,* 500 Pa. 399, 456 A.2d 1348, 1350 (1983); *Stauffer v. Stauffer,* 465 Pa. 558, 351 A.2d 236, 240 (1976). The parties are correct that because the Site is located in Pennsylvania, Pennsylvania law determines whether a constructive trust should be impressed on the proceeds. *See Jaffke v. Dunham,* 352 U.S. 280, 281, 77 S.Ct. 307, 308, 1 L.Ed.2d 314 (1957); *Kemp v. Bowen (In re Visiting Nurse Ass'n of Western Pennsylvania),* 143 B.R. 633, 637 (W.D.Pa.1992), *aff'd,* 986 F.2d 1410 (3d Cir.1993); *see also Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) (in bankruptcy cases, "[p]roperty interests are created and defined by state law"); *Sanyo Elec., Inc. v. Howard's Appliance Corp., (In re Howard's Appliance Corp.),* 874 F.2d 88, 93 (2d Cir.1989) ("The existence and the nature of a debtor's interest, and correspondingly the estate's interest in property is determined by state law." (citations omitted)).[8]

 The complaint focuses principally on Commodore's alleged unjust enrichment, *see* Complaint ¶¶ 25, 31–35, although plaintiff purports to allege that it has been defrauded by Commodore. *See* Complaint ¶¶ 23, 24, 35. Under Rule 12(b)(6), a complaint will be dismissed if it fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A motion to dismiss addresses the adequacy of the pleadings, not the merits of the complaint. *See Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985); *Stern v. Gen.*

*Elec. Co.,* 1992 WL 8195 (S.D.N.Y. January 14, 1992); *see also* 5A Charles A. Wright & Arthur R. Miller *Federal Practice and Procedure* § 1356 (West 2d ed.1990). The motion should be granted only if it appears with certainty that no set of facts can be established at trial which would entitle plaintiff to any relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Brass v. American Film Technologies, Inc.* 987 F.2d 142, 150 (2d Cir. 1993) (quoting *Conley* ); *Henschke v. New York Hospital–Cornell Medical Ctr.,* 821 F.Supp. 166, 168 (S.D.N.Y.1993) (citing *Conley* ). Generally, only the complaint and documents annexed to the complaint or those incorporated by reference therein, are relevant in considering the merits of a Rule 12(b)(6) motion. *See, e.g., Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir.1989). The rule does make allowance for the submission of matters outside the pleading, which the court, in its discretion, may consider in connection with the motion. *See* Fed.R.Civ.P. 12(b). However, "if matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Id.* In opposition to the motion, Allen–Bradley submitted the Schrag Affidavit and a memorandum of law ("Plaintiff's Mem."). Annexed to the Schrag Affidavit are documents not part of Allen–Bradley's complaint. Neither party requested that the motion be converted to one for summary judgment. We decline to do so and will treat this as a motion to dismiss.

 A constructive trust may be imposed on property obtained by a defendant by fraud. *See, e.g., Stauffer v. Stauffer,* 351 A.2d 236 (constructive trust imposed on home husband had conveyed to wife where wife's misrepresentation regarding the imminence of a lawsuit against him had induced

---

8. Once the nature and extent of debtor's interest in the property is determined, federal bankruptcy law dictates the extent to which the property is property of the estate. *Bavely v. I.R.S. (In re Terwilliger's Catering Plus, Inc.),* 911 F.2d 1168, 1172 (6th Cir.1990), *cert. denied sub nom. Ohio Dept. of Taxation v. I.R.S.,* 501 U.S. 1212, 111 S.Ct. 2815, 115 L.Ed.2d 987 (1991); *N.S. Garrott & Sons v. Union Planters Nat'l Bank of Memphis (In re N.S. Garrott & Sons),* 772 F.2d 462, 466 (8th Cir.1985).

the transfer); *Robbins v. Kristofic*, 434 Pa.Super. 392, 643 A.2d 1079 (1994) (constructive trust imposed on funds fraudulently transferred to father's account from trust established for children's benefit). In Pennsylvania, the elements of a cause of action for fraud are (1) misrepresentation; (2) a fraudulent utterance thereof; (3) an intention by the maker that the recipient will act; (4) justifiable reliance by the recipient upon the misrepresentation; and (5) damage to the recipient. as a proximate result. *See, e.g., Bohm v. Commerce Union Bank*, 794 F.Supp. 158, 163 (W.D.Pa.1992); *Constitution Bank v. DiMarco*, 155 B.R. 913, 918 (E.D.Pa.1993). Allen–Bradley urges that it has adequately alleged a claim for fraud, or at least bad faith, on Commodore's part, which, when coupled with Commodore's alleged unjust enrichment, sustains its claim for the imposition of a constructive trust on the proceeds. Fed.R.Civ.P. 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Thus, to satisfy this rule, the complaint must allege the time, place, speaker, and sometimes even the content of the alleged representation. *See, e.g., Ouaknine v. MacFarlane*, 897 F.2d 75, 79 (2d Cir.1990); *DiVittorrio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1244 (2d Cir.1987); *Luce v. Edelstein*, 802 F.2d 49, 52 (2d Cir.1986). The term "bad faith" is not susceptible of a ready definition. Generally, it implies "actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." *Black's Law Dictionary* 139 (6th ed.1990). The facts and circumstances of each case dictate whether the action or inaction of the alleged wrongdoer rises to the level of bad faith. *See, e.g., Montgomery v. Federal Insurance Co.*, 836 F.Supp. 292, 298 (E.D.Pa.1993) (totality of the evidence submitted by plaintiff failed to support any inference that a genuine issue of material fact existed as to whether insurer had acted in bad faith in denying his insur-

ance claim; insurer's motion for summary judgment on bad faith count of complaint granted); *In re Kulzer Roofing, Inc.*, 139 B.R. 132, 142 (Bankr.E.D.Pa.1992) (union seeking constructive trust on monies which debtor deducted from wages and failed to remit to appropriate sources failed to allege facts sufficient to support *inter alia* a finding of bad faith; constructive trust denied), *aff'd*, 150 B.R. 134 (E.D.Pa.1992). As with fraud, a constructive trust may be imposed on property obtained by bad faith. *See generally In re Kulzer Roofing, Inc.*, 139 B.R. at 142 (constructive trust may be imposed where property obtained through bad faith, fraud, or lack of good conscience); *In re Summit Airlines, Inc.*, 94 B.R. 367, 370 (Bankr. E.D.Pa.1988) (same), *aff'd*, 102 B.R. 32 (E.D.Pa.1989).

■■■■ Allen–Bradley's complaint alleges "upon information and belief" that Commodore collusively agreed to shield Wausau from environmental liabilities, *see* Complaint ¶ 35, and that "it has reason to believe" that the Insurance Settlement Agreement resolved all claims between Commodore and Wausau under the Wausau Policies for a fraction of the cost of remediating the Site in an effort to destroy or otherwise interfere with Allen–Bradley's alleged rights as indemnitee of Commodore and to prevent Commodore's creditors (including Allen–Bradley) from compelling Wausau to make payments. *See* Complaint ¶¶ 23, 24. Those conclusory allegations fail to satisfy the pleading requirements of Rule 9(b). *See, e.g., Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Western*, 1990 WL 210304 *6 (S.D.N.Y. December 11, 1990) (dismissing complaint for failure to plead fraud with particularity where pleadings failed to allege facts which would support that third-party defendants misrepresented to defendant/third-party plaintiff that restricted stock it received was freely transferable); *Thomson McKinnon Securities, Inc. v. Bank of New York (In re Thomson McKinnon Securities, Inc.)*, 147 B.R. 330, 333 (Bankr.S.D.N.Y.1992) (dismissing RICO complaint based on fraud where plaintiff's allegations that bank employees acted to benefit the bank were insufficient to support claim that the bank acted with scien-

ter or motive). Moreover, as a general rule, allegations of fraud cannot be based on "information and belief". *See, e.g., Luce v. Edelstein*, 802 F.2d at 54 n. 1; *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir.1972). A narrow exception to that rule exists where the matters alleged are uniquely within the adverse party's knowledge. Even in those instances, however, the plaintiff must allege the facts upon which its information and belief are founded. *See Segal v. Gordon*, 467 F.2d at 608. Plaintiff seemingly seeks to avail itself to that limited exception by urging that with discovery, it will be able to flesh out its allegations of fraud. However, plaintiff has failed to allege the facts upon which its "information and belief" is premised. In its brief filed in response to this motion, Allen–Bradley contends that the alleged fraud of MOS in failing to disclose the existence of the environmental problems at the Site in 1974 [9] can be charged to Commodore. Because those allegations introduce matters outside the four corners of the complaint, they are irrelevant to the merits of Commodore's motion. However, even if those allegations are assumed to be true and relevant to the motion, the complaint would not state a claim for the imposition of a constructive trust on the proceeds. Before a constructive trust will be imposed on property to remedy the fraud or bad faith of the party in possession of the property, movant must establish a nexus between the fraud and/or bad faith and the receipt of the property. *See, e.g., Crown Cork & Seal Co. v. Ascah*, 1994 WL 147732 (E.D.Pa. April 13, 1994) ("The test is whether [defendant] has been unjustly enriched by the property at issue—i.e. may not in good conscience maintain legal title to property allegedly derived from the underlying fraud."

(citing *Spinner v. Fulton*, 777 F.Supp. 398, 402 (M.D.Pa.), *aff'd* 947 F.2d 937 (3d Cir. 1991))). Allen–Bradley has not alleged facts establishing that nexus.[10]

■ "A court in equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief." *Roberson v. Davis*, 397 Pa.Super. 292, 580 A.2d 39, 41 (1990) (quoting *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. at 382, 122 N.E. 378). Thus, Allen–Bradley is correct that contrary to Commodore's assertion, a finding of fraud is not a prerequisite to the imposition of a constructive trust under Pennsylvania law. *See, e.g., Dubin Paper Co. v. Insurance Company of North America*, 361 Pa. 68, 63 A.2d 85, 94–95 (1949). Constructive trusts have been imposed in the absence of wrongful conduct to prevent unjust enrichment. *See, e.g., American Trade Partners L.P. v. A–1 International Importing Enterprises, Ltd.*, 755 F.Supp. 1292, 1301–02 (E.D.Pa.1990) (court denied motion to dismiss count in complaint alleging breach of trust relationship and conversion of payments due plaintiff against defendant officers and directors where plaintiff alleged sufficient facts to support a colorable claim to constructive trust; plaintiff alleged that defendant officers and directors had failed to hold in trust funds assigned to plaintiff; plaintiff further alleged that defendants had used the funds for their own purposes); *Buchanan v. Brentwood Savings & Loan Assn.*, 320 A.2d at 126–28 (reversing lower court's dismissal of complaint for failure to state cause of action where *inter alia* it appeared that plaintiff had raised colorable question as to entitlement to a constructive trust; class plaintiffs

---

**9.** Allen–Bradley contends that (i) MOS discovered a leak in the tank in which it stored the TCE; (ii) MOS did not investigate the cause of the leak or of the hole in the tank; (iii) no pictures were taken of the tank or of the hole in the tank; and (iv) MOS failed to notify anyone about the leak in the tank. *See* Plaintiff's Mem. p. 13, ¶ (g). In doing so, it relies on answers to interrogatories submitted by MOS in a lawsuit entitled *Audubon Water Co. v. MOS Technology, Inc.*, Montgomery County Court of Common Pleas, Civil Action No. 80–2643, and the deposition testimony of an individual named Gordon Epps, taken in that proceeding. *See* Schrag Affidavit Exs. D, E.

**10.** In footnote 3 to the complaint, Allen–Bradley contends that it is constrained by a confidentiality agreement from disclosing the terms of the Insurance Settlement Agreement. *See* Complaint p. 6 n. 3. However, it does not allege that this restriction bars it from pleading the alleged fraud or bad faith with greater particularity or that the alleged wrongdoing gave rise to the proceeds.

As explained *infra*, in any event, the complaint is fatally deficient because Allen–Bradley has not plead facts establishing that Commodore has been unjustly enriched by its remediation of the Site.

alleged that mortgagee held monthly tax payments as trustee, had commingled the funds with its own money, and had invested them, earning interest; appellants further alleged that mortgagees failed to segregate the tax payments, apply them to their mortgages, and account to appellants for the interest earned on those payments); *Kimball v. Barr Township*, 249 Pa.Super. 420, 378 A.2d 366, 368–69 (1977) (affirming lower court's decision to impose constructive trust on funds paid by coal company to township for proposed water system which were specifically designated to compensate project engineer; court found that engineer had expected payment for his services and township had benefitted from them).

■■■■ A party is unjustly enriched when a benefit is conferred on it "under such circumstances that it would be inequitable for [that party] to retain the benefit without payment of value." *Burgettstown–Smith Township Joint Sewage Authority v. Langeloth Townsite Co.*, 403 Pa.Super. 84, 588 A.2d 43, 45 (1991); *see also State Farm Mutual Automobile Ins. Co. v. Jim Bowe & Sons, Inc., et al.*, 372 Pa.Super. 186, 539 A.2d 391, 393 (1988) (recovery is permitted where the claimant can show that defendant wrongfully secured or passively received a benefit "and that it would be unconscionable for the party receiving the benefit to retain it without pay-

ment"). The benefit must flow directly to the defendant. A benefit conferred indirectly, as when it is merely incidental to actions taken by the plaintiff on its own behalf, cannot support a claim for unjust enrichment. *See, e.g., Meehan v. Cheltenham Township*, 410 Pa. 446, 189 A.2d 593, 595 (1963) (township not unjustly enriched where plaintiff improved land with streets as per contract with private developer and private developer later became insolvent and dedicated streets to township); *Burgettstown–Smith Township Joint Sewage Authority v. Langeloth Townsite Co.*, 588 A.2d at 46 (pollution study ordered by state environmental authority and conducted by local sewage authority did not unjustly enrich private landowner who thereby became informed that pollution control systems on his land were inadequate).

■■■■ Under CERCLA, Allen–Bradley and Commodore are jointly and severally liable for the costs of remediating the Site. *See* 42 U.S.C. § 9607(a). In expending funds to do so, Allen–Bradley is discharging its own obligation. The sanctions for failing to do so are severe. *See* 42 U.S.C. § 9606(b)(1).[11] The benefits accruing to Commodore are incidental to those realized by Allen–Bradley in discharging its own liability to the EPA.[12] Moreover, Commodore

11. CERCLA § 9606(b)(1) provides:
 Any person who, without sufficient cause, willfully violates, or fails or refuses to comply with, any order of the President under subsection (a) of this section may, in an action before the appropriate United States district court to enforce such order, be fined not more than $25,000 for each day in which such violation occurs or such failure to comply continues. 42 U.S.C. § 9606(b)(1).

12. Contrary to Allen–Bradley's assertion, the case of *Department of Environmental Resources v. Winn*, 142 Pa.Cmwlth. 375, 597 A.2d 281 (1991), *appeal denied*, 529 Pa. 654, 602 A.2d 863 (1992), does not support a contrary conclusion. In that case, the Pennsylvania Department of Environmental Resources ("DER") issued an *ex parte* order requiring Winn to undertake remedial measures at a landfill and pay all costs of cleaning it up. Winn appealed the order. However because he faced the imposition of civil and criminal sanctions if he failed to act pending resolution of his appeal, he expended $1 million to clean up the site while the appeal was pending. *Id.* 597 A.2d at 283. After it was deter-

mined that DER had abused its discretion in naming Winn in the *ex parte* remediation order, Winn filed a claim against DER and the Commonwealth of Pennsylvania (collectively, the "Commonwealth") with the Board of Claims (the "Board"). The Commonwealth petitioned the Board for judgment on the pleadings and the request was denied. The Commonwealth was granted leave to file an interlocutory appeal. *Id.* Accordingly, the issues before the court were (1) whether the Board had jurisdiction over Winn's statement of claim; (2) whether sovereign immunity barred the claim; and (3) whether the claim was barred by the Board's six month statute of limitations. *Id.* The court held that the Board's jurisdiction extended only to assumpsit actions based upon specified claims alleging express, implied-in-fact and implied-in-law contracts. *Id.* at 284. Because there was no actual or express contract between Winn and the Commonwealth to remediate the site, the court concluded that the Board's jurisdiction, if any, would arise only if a contract implied-in-law, i.e. a quasi contract, existed among the parties. *Id.* at 284–85. To establish the existence of such a contract, Winn was required to show that the Commonwealth

does not get a free ride. To the extent Allen–Bradley's claim is allowed, debtor must pay it as mandated by the Code. Plaintiff's urging notwithstanding, it is not unconscionable to limit Allen–Bradley to that remedy even assuming, *arguendo*, that it has an allowed contribution claim that will go substantially unpaid under Commodore's liquidating plan. To the contrary, the result will be an equitable one: Allen–Bradley will be treated in the same fashion as other general unsecured creditors. Its disappointment with what is likely to be a meager return on its claim (if allowed) is no basis upon which to grant it the extraordinary relief it seeks in this litigation.

This result furthers the Code's "central policy" of "equality of distribution among creditors." *Begier v. I.R.S.*, 496 U.S. 53, 58, 110 S.Ct. 2258, 2262–63, 110 L.Ed.2d 46 (1990). The Code defines "property of the estate" to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). However, where, as of the commencement of the case, the debtor holds only legal title to property, and not an equitable interest therein, it becomes property of the estate under § 541(a)(1) "only to the extent of debtor's legal interest in such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d). Property held by the debtor subject to a constructive trust vests the estate with bare legal title to that property subject to the superior equitable interest of the true owner. *Sanyo Electric, Inc. v. Howard's Appliance Corp. (In re Howard's Appliance Corp.)*, 874 F.2d 88, 92

---

was unjustly enriched by his actions. The court held that the Commonwealth was not unjustly enriched by the funds expended by Winn to remediate the site because it did not own the site. *Id.* at 285. Thus, it dismissed Winn's claim for want of jurisdiction. *Id.* This case does not support the proposition that funds expended by one party to discharge all or a portion of a joint and several liability unjustly enriches its co-obligor. Rather, it merely furthers the legal principle enunciated in *Tugboat Indian Co. v. A/S Ivarans Rederi*, 334 Pa. 15, 5 A.2d 153 (1939), that one who pays, under coercion or duress, the obligation of another is entitled to restitution from the true debtor. *Id.* 597 A.2d at 285 n. 5. Allen–Bradley is discharging its own liabilities to the EPA through the remediation of the Site. It has not been coerced to pay the obligation of another. Thus, *Winn* is inapposite to the matters raised in the complaint.

Allen–Bradley also misplaces its reliance on *In re Better–Brite Plating, Inc.*, 105 B.R. 912 (Bankr. E.D.Wis.1989), *vacated and set aside on appeal as moot after settlement*, 136 B.R. 526 (Bankr. E.D.Wis.1990). There the court denied the motions of the State of Wisconsin and debtor's former landlord for an order compelling the trustee to expend funds to clean up two contaminated parcels of real property owned by the debtor. *Id.* at 918–19. The motions, which were filed in opposition to the trustee's motion to abandon the two parcels, argued that the remediation costs should be charged against the bank's collateral pursuant to 11 U.S.C. § 506(c). The bank held a security interest in proceeds from the sale of the debtor's personal property and in debtor's contaminated real property. *Id.* at 915–16. The court denied movants' request to recover from the proceeds of the personal property, and allowed the trustee to abandon the two parcels, but held that both the state and federal environmental agencies cleaning up the property would have superpriority liens which would prime the bank's interest on any proceeds generated by any subsequent sale of the property in foreclosure by the bank. *Id.* at 918–19. The district court affirmed the bankruptcy court, and the state appealed the case to the Seventh Circuit Court of Appeals. While on appeal, the case was mooted by the removal of the hazardous waste from the properties by federal agencies. *See In re Better–Brite Plating, Inc.*, 136 B.R. 526 (Bankr.E.D.Wis. 1990). By order of the district court as directed by the Seventh Circuit, the bankruptcy court "vacated and set aside [its decision and order] as moot insofar as it pertains to whether or not the trustee is required to expend funds subject to a perfected secured interest to dispose of hazardous wastes generated and illegally stored by the trustee in his operation of the debtor's facility." *Id.* at 527. Accordingly, the bankruptcy court's decision has no legal significance or precedential effect. *See O'Connor v. Donaldson*, 422 U.S. 563, 577 n. 12, 95 S.Ct. 2486, 2494–95 n. 12, 45 L.Ed.2d 396 (1975); *Association for Retarded Citizens of Connecticut, Inc. v. Thorne*, 30 F.3d 367, 372 (2d Cir.1994), *cert. denied*, — U.S. —, 115 S.Ct. 727, 130 L.Ed.2d 631 (1995). Even assuming that the decision could be accorded some weight, the underlying facts are so different from those found here that it adds nothing to plaintiff's argument. For example, the case does not even consider the issue of unjust enrichment among jointly and severally liable parties. Indeed, it is not a constructive trust case at all. Rather, the focus is on the chapter 7 trustee's ability to abandon property of the estate contaminated by hazardous waste, and the government's ability to recover reasonable and necessary remediation costs from the property as administrative expenses. 105 B.R. at 916–18.

(2d Cir.1989); *In re Quality Holstein Leasing,* 752 F.2d 1009, 1012 (5th Cir.1989). That bare interest is not "property of the estate" available to satisfy the claims of creditors. *Begier v. I.R.S.,* 496 U.S. at 59, 110 S.Ct. at 2263; *see also In re Howard's Appliance Corp.,* 874 F.2d at 93 (" 'Congress plainly excluded [from the debtor's estate] property of others held by the debtor in trust at the time of the filing of the petition' " (quoting *United States v. Whiting Pools,* 462 U.S. 198, 205 n. 10, 103 S.Ct. 2309, 2314 n. 10, 76 L.Ed.2d 515 (1983))). *But see In re Omegas Group, Inc.,* 16 F.3d at 1450–51 (because constructive trust is a remedy, it does not exist until plaintiff obtains a judicial determination of its right to the remedy; thus plaintiff's claim to constructive trust is not an "equitable interest" existing pre-petition, excluded from the estate under § 541(d)). In effect, Allen–Bradley would have us diminish the funds available to pay general unsecured creditors of the estate by the sum of $1.5 million and reserve those funds exclusively for the partial repayment of its claim. However, under the facts alleged in the complaint, Allen–Bradley is, at best, a general unsecured creditor. The mere existence of a debtor/creditor relationship in a bankruptcy case is not a ground to impose a constructive trust. *McKey v. Paradise,* 299 U.S. 119, 122–23, 57 S.Ct. 124, 125, 81 L.Ed. 75 (1936); *In re Penn–Dixie Steel Corp.,* 6 B.R. 817, 825 (Bankr.S.D.N.Y.1980), *aff'd,* 10 B.R. 878 (S.D.N.Y.1981). *See generally In re Omegas Group, Inc.,* 16 F.3d at 1452 (reversing district court's judgment imposing constructive trust on portion of debtor's assets, "[c]onstructive trusts are anathema to the equities of bankruptcy since they take from the estate, and thus from competing creditors, and not from the offending debtor" (footnote omitted)); *In re North Am. Coin & Currency, Ltd.,* 767 F.2d 1573, 1575–77 (9th Cir. 1985) (bankruptcy court's refusal to impose constructive trust upon bank account designated "Special Trust Account" which contained customer payments was correct where there was no evidence of fraud or intentional misrepresentation; given the strong bankruptcy policy of equal treatment of similarly situated creditors, court rejected assertion that it would be unconscionable for debtor to

retain benefit), *cert. denied sub nom. Torres v. Eastlick,* 475 U.S. 1083, 106 S.Ct. 1462, 89 L.Ed.2d 719 (1986).

### Conclusion

Based on the foregoing, the defendant's motion is granted.

SETTLE ORDER.